The STATE of Ohio, Appellee,

v.

CHAPMAN, Appellant.

[Cite as *State v. Chapman* (1992), 73 Ohio App.3d 132.]

Court of Appeals of Ohio,
Allen County.

No. 1-91-26.

Decided March 13, 1992.

*David E. Bowers*, Prosecuting Attorney, and *Gary R. Hermon*, Assistant Prosecuting Attorney, for appellee.

*Robert A. Grzybowski*, for appellant.

HADLEY, Presiding Judge.

This is an appeal by defendant-appellant Frank K. Chapman from a judgment of the Allen County Court of Common Pleas, entered May 15, 1991, finding him guilty of aggravated trafficking in drugs, pursuant to R.C. 2925.03(A)(6), after a trial to the court.

The record shows that, on March 1, 1991, appellant was operating a green Oldsmobile with two passengers southbound on Interstate 75 in Allen County. As Trooper Stevens of the Ohio State Highway Patrol observed that the vehicle had very dark tinted windows, he decided to stop the vehicle for possible violation of R.C. 4513.241. Trooper Stevens testified that he called Trooper Stockman for backup when, upon turning his lights on, he noticed unusual movements in the rear seat of the vehicle, specifically that a person's head came up, went down out of sight, then came up again.

As appellant's vehicle pulled over, Trooper Stevens's backup arrived. Appellant was advised as to why he had been stopped and was asked to produce his license and registration. It was discovered that appellant and his passengers were residents of the Detroit area while the vehicle had Ohio license plates and was titled to a Mr. Williams of Dayton, Ohio.[1] All three subjects were then asked to exit the vehicle so that the interior area could be searched for weapons before continuing with the traffic stop.

Trooper Stevens testified that he searched the front seat area and found no weapons. As he entered the rear seat area, he observed that the lid on the arm rest ashtray was open and inside was a marijuana "roach." Additionally, he observed that the door panels were loose, the bottom seat was cockeyed and that there was a very strong odor of a deodorizer inside the vehicle. The entire ashtray was removed and taken back to Trooper Stockman, who had since been joined by Trooper Spurgeon.

---

1. As can best be determined, appellant testified that he was being paid to drive the vehicle by one of his passengers, Mr. Holt, because Holt needed to get to Dayton to pick up some money, and that he believed that Holt had purchased the vehicle from Williams.

The three subjects were asked if there were any more drugs and the right front passenger responded "yes," and pulled from his pocket a small envelope containing marijuana. Upon a pat-down of the three subjects, appellant and the right front passenger were each found to be carrying electronic pagers. They were then advised that the entire vehicle would be searched for more drugs.

As Trooper Stockman searched the interior compartment, Trooper Stevens opened the hood and began to search the engine compartment. Trooper Stevens testified that he noticed that the insulation on the underside of the hood was hanging down and that a black velvet zip pouch had been stuffed in the cavity of the insulation. The pouch was extracted and the subjects were asked what it contained and who owned it. They each denied ownership. Trooper Stevens then unzipped the pouch and approximately two hundred thirty grams of cocaine were discovered.

Appellant was charged with aggravated trafficking in drugs, pursuant to R.C. 2925.03(A)(6), and a hearing was held on appellant's motion to suppress the evidence. The court overruled appellant's motion, stating that the officers had probable cause to stop the vehicle and search for weapons and then had further probable cause to search for controlled substances. Thereafter, a trial to the court was held and appellant was found guilty beyond a reasonable doubt.

From this judgment, appellant now appeals, posing three assignments of error.

### Assignment of Error No. 1

"The trial court erred in denying defendant–appellant's motion to suppress since the evidence obtained was the result of an illegal search and seizure."

Before addressing this assignment, we first note that it is questionable as to whether appellant even had standing to challenge the search of the vehicle. See *State v. Fuller* (Sept. 27, 1989), Allen App. Nos. 1–88–1 and 1–88–2, unreported, 1989 WL 111981; and *State v. Stoddard* (May 25, 1990), Marion App. No. 9–89–5, unreported, 1990 WL 72397. However, as the state never raised the issue and because it ultimately has no effect on our holding, we will address the assignment as argued by the parties.

Appellant concedes that the initial stop of the vehicle for a window-tint violation was proper. Thus, the question presented to this court is strictly one of the legality of the subsequent search of the vehicle and seizure of the contraband. Appellant contends that the officers lacked the requisite "reasonable suspicion" to search the vehicle for weapons or controlled substances.

Under the guise of the principles enunciated in *Terry v. Ohio* (1968), 392 U.S. 1, at 21, 88 S.Ct. 1868, at 1879, 20 L.Ed.2d 889, at 905, in *Michigan v. Long* (1983), 463 U.S. 1032, at 1049–1050, 103 S.Ct. 3469, at 3481, 77 L.Ed.2d 1201, at 1220, the United States Supreme Court concluded that:

" * * * [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect may gain immediate control of weapons."

Moreover, in *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264, 102 L.Ed.2d 252, paragraph two of the syllabus, the Ohio Supreme Court stated:

"Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others."

In the case *sub judice*, the following facts were alleged to have led to the trooper's reasonable suspicion of the possible presence of weapons. The vehicle had dark tinted windows, substantially limiting visibility into the vehicle. When the officer turned his red lights on to initiate the stop, he observed through the rear window the silhouette of an individual's head coming up, going down and then coming back up again. Upon observing this "strange" behavior, the trooper immediately called for backup. Additionally, the appellant was a Detroit resident with a Michigan license but the car was registered in Ohio to a Dayton man.

Based on the totality of the circumstances, we cannot say that the trooper objectively lacked a reasonable belief or suspicion that a suspect would gain control of a weapon. See *State v. Smith* (1978), 56 Ohio St.2d 405, 10 O.O.3d 515, 384 N.E.2d 280. "The law does not require that an officer wait until the point of peril to take protective action. It is sufficient that he has a reasonable basis to believe that his safety requires a search or seizure." *Id.* at 409, 10 O.O.3d at 517, 384 N.E.2d at 282.

■ Having found that the trooper's limited search of the passenger compartment for weapons was proper, the issue becomes whether it was reasonable for the trooper to then conduct a more extensive warrantless search, including the engine compartment, for controlled substances? We find that the search and subsequent seizure were proper.

It is axiomatic that the troopers needed probable cause to believe that drugs were being transported or concealed in the automobile in order to effectuate a lawful search under the automobile exception to the Fourth Amendment. In *United States v. Ross* (1982), 456 U.S. 798, at 823, 102 S.Ct. 2157, at 2172, 72 L.Ed.2d 572, at 592–593, the Supreme Court stated:

" * * * [A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband.  * * * "

Moreover, the *Ross* holding was summarized in headnote eight, 102 S.Ct. at 2158, as follows:

"Police officers who had legitimately stopped automobile and who had probable cause to believe that contraband was concealed somewhere within it could conduct warrantless search of the vehicle as thorough as a magistrate could authorize by warrant, since scope of warrantless search of automobile is not defined by nature of container in which the contraband is secreted, but rather, is defined by the object of the search and places in which there is probable cause to believe that it may be found[.]  * * * "

In *Michigan v. Long, supra,* 463 U.S. at 1050, 103 S.Ct. at 3481, 77 L.Ed.2d at 1220, the Supreme Court stated:

" * * * If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." (Citations omitted.)

In the case *sub judice,* the following facts were alleged to have provided the troopers with the requisite probable cause to believe that drugs were being transported.  As the officer began to search for weapons in the passenger compartment, in plain view, he observed a "roach" in a rear door ashtray, that the door panels were loose and that the back seat was cockeyed, and he smelled a strong odor of a deodorizer present in the vehicle.  Upon asking the subjects if there were more drugs, one passenger handed over a small envelope of marijuana and after a pat down, he and appellant were found to be carrying electronic pagers.

The trooper stated that this stretch of Interstate 75 is widely known to be a "drug pipeline" out of Detroit and, that it was his experience, that "we have found money hidden in air breathers, and various drugs, cocaine and marijuana, hid up in the engine compartment in the past."

Based on the foregoing, we cannot say that the trial court erred in finding that probable cause existed to conduct a search of the entire vehicle, including

the engine compartment, for the presence of drugs. For once the troopers legitimately stopped the vehicle and had probable cause to believe that drugs were concealed somewhere within it, they could be "as thorough as the magistrate could authorize by warrant."

Therefore, as the trial court did not err in denying appellant's motion to suppress, appellant's first assignment of error is overruled.

### Assignment of Error No. 2

"The trial court erred in not entering a judgment of acquittal of the charge of aggravated drug trafficking pursuant to Criminal Rule 29(A) as the evidence presented was insufficient to sustain a conviction of the charge."

Appellant contends that a judgment of acquittal should have been granted because the state failed to prove all of the material elements of aggravated drug trafficking beyond a reasonable doubt, specifically that appellant "knowingly possessed" a controlled substance. R.C. 2925.03(A)(6) reads, in pertinent part:

"(A) No person shall knowingly do any of the following:

" * * *

"(6) Possess a controlled substance in an amount equal to or exceeding three times the bulk amount * * *[.]"

Appellant argues that the state has attempted to prove its case by mere inferences and circumstantial evidence, including the electronic pagers, the strong odor of a deodorizer, and the testimony that it was appellant and not the passengers who became evasive and nervous when the vehicle was searched. Additionally, there was testimony that a towing receipt, made out in appellant's name, was found in the green Oldsmobile's glove box. Trooper Stockman stated that appellant told him that the receipt was from a tow of the Oldsmobile approximately one week earlier.

Pursuant to Crim.R. 29(A), " * * * a court may not order an acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Brown* (1982), 7 Ohio App.3d 113, 117, 7 OBR 145, 150, 454 N.E.2d 596, 601, citing *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. Thus, "the question is whether, viewing the evidence in a light most favorable to the government, a reasonable mind might fairly find each element of the offense beyond a reasonable doubt." *Cincinnati v. Robben* (1982), 8 Ohio App.3d 203, 8 OBR 274, 456 N.E.2d 1255, citing *Bridgeman, supra.*

In viewing the evidence in a light most favorable to the state, we find that the trial court committed no error in denying appellant's motion for acquittal. Reasonable minds could reach different conclusions as to whether appellant both possessed and had knowledge of the two hundred thirty grams of cocaine discovered under the hood of the vehicle which appellant was operating.

In *State v. Dick* (Mar. 22, 1991), Seneca App. No. 13–89–48, unreported, 1991 WL 44168, we stated "the greater the amount involved the more likelihood there is that the mental state of knowledge of possession exists." Moreover, although the evidence presented was circumstantial in nature, the Ohio Supreme Court held in *State v. Jenks* (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492, 502.

"Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence."

Therefore, as the trial court did not err in denying appellant's motion of acquittal, appellant's second assignment of error is overruled.

## Assignment of Error No. 3

"The jury trial court's verdict of guilty beyond a reasonable doubt of violating Ohio Revised Code, Section 2925.03(A)(6), aggravated drug trafficking is against the manifest weight of the evidence."

The proper standard of review for an appellate court in determining whether a verdict is against the manifest weight of the evidence was set forth by the Ohio Supreme Court in *State v. Jenks, supra,* at paragraph two of the syllabus:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

In the case *sub judice,* after reviewing the evidence admitted at trial in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of aggravated drug trafficking proven beyond a reasonable doubt. Appellant's entire testimony was contradictory and improbable at best.

Again, the only elements really in dispute were whether appellant had knowledge and possession of the two hundred thirty grams of cocaine found under the hood of the vehicle which he was operating. As was previously

addressed, upon the evidence adduced as to these elements, a reasonable mind could clearly find that they were proven beyond a reasonable doubt.

Accordingly, appellant's third assignment of error is overruled and the judgment of the Allen County Court of Common Pleas is affirmed.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.