DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant David Carpenter has appealed from his conviction in the Medina County Common Pleas Court of trafficking in drugs, a violation of Section 2925.03(A)(4) of the Ohio Revised Code, and aggravated trafficking in drugs, a violation of Section2925.03(A)(9) of the Ohio Revised Code. He has argued that: (1) the trial court incorrectly denied his motion to suppress the evidence against him because the searches that uncovered it were illegal; (2) the trial court incorrectly failed to suppress statements he made before and after his arrest; (3) the trial court incorrectly received testimony regarding his exercise of his constitutional rights, namely, his right to refuse consent to a search of the car and his right to counsel; (4) the trial court incorrectly failed to suppress evidence seized as a result of an illegal inventory search; (5) the trial court incorrectly failed to grant his motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure; and (6) the jury's verdict was against the manifest weight of the evidence. This Court affirms the judgment of the trial court because: (1) the searches that uncovered the evidence against defendant were not illegal; (2) defendant's statements were not taken in violation of his rights and were admissible; (3) assuming it was error to permit introduction of testimony regarding the exercise of his constitutional rights, that error did not prejudice him; (4) he failed to raise the illegality of the inventory search in his motion to suppress; (5) the jury's verdict was based on sufficient evidence; and (6) the jury's verdict was not against the manifest weight of the evidence.
 I.
Defendant was arrested on May 26, 1996. On that day, Sunday of the Memorial Day weekend, Ohio Highway Patrol officers were stopping speeders on Interstate 271, three or four miles north of its intersection with Interstate 71. The officers on the ground were being assisted by an officer overhead in an airplane.
At approximately 1:45 p.m., a motorist driving south on Interstate 71 telephoned the Highway Patrol's Medina Post and reported that he was traveling behind a blue and white automobile that was swerving and that he believed its driver was intoxicated. The motorist stated that he had just passed the area at which the officers on the ground were watching for speeders.
The officer who was piloting the airplane began looking for the automobile the motorist had described and spotted it traveling in the left southbound lane on Interstate 71. As he watched, the automobile swerved from the left lane, completely across the right lane onto the berm, and part way off the berm onto the grass on the right side of the highway. It then came back into the right lane and continued southbound.
The pilot radioed Sergeant Bittner, one of the officers on the ground, and informed him of what he had observed. Sergeant Bittner was already southbound on Interstate 71 in an effort to overtake the blue and white automobile. He eventually did overtake it and carried out a traffic stop.
Trooper Farabaugh, another of the officers on the ground, arrived at the scene of the traffic stop immediately after the blue and white car pulled to the side of the road. As Sergeant Bittner approached the driver's side of the car, Trooper Farabaugh approached the passenger side. The officers noticed that there was a temporary New York license plate taped to the rear window of the car and that its interior was cluttered with "debris like from fast food restaurants, or coffee cups that were just laying around." Defendant was driving the car. He was accompanied by two passengers. It appeared that the occupants had been "riding in the car for some time."
Defendant identified himself and, upon request, gave Sergeant Bittner a temporary New York registration card for the car that, apparently, did not identify the car's owner. He also gave Sergeant Bittner his Arizona operator's license. He explained the weaving by saying that he was tired, having driven from New York City that day on his way home to Arizona. Sergeant Bittner administered a field sobriety test to defendant and determined that he was not under the influence of alcohol or drugs. A computer check of his license indicated that it was suspended.
Sergeant Bittner had defendant sit in the back seat of his patrol car while he wrote him a citation for failing to drive within marked lanes. He did not cite defendant for driving under suspension because of a lack of confidence in the reliability of the information about his Arizona license.
While Sergeant Bittner spoke with defendant, Trooper Farabaugh spoke with the car's passengers, William Kelly and Nial Napier. They were very quiet while Trooper Farabaugh talked with them and answered his questions abruptly. During that conversation, Mr. Napier claimed that the car was owned by defendant.
Trooper Farabaugh joined Sergeant Bittner and defendant in the patrol car as Sergeant Bittner was completing the issuance of the citation to defendant. Trooper Farabaugh asked defendant if the car he had been driving contained any "large sums of money, drugs or weapons[.]" Defendant "immediately answered no, his posture seemed to straighten up, his voice became louder, talking faster, that type of thing, became more animated." At approximately that time, Sergeant Bittner completed writing the citation. He informed defendant about the procedure for mailing in the fine. After he issued the citation, he told defendant that he was free to go and then asked him whether, before he went, he would mind if the officers searched his car. Defendant responded that it was not his car, but, if it were, he would not allow them to search it. At that time, Trooper Farabaugh asked whose vehicle it was, and defendant responded that it was Mr. Napier's.
Trooper Farabaugh is a member of the Highway Patrol's drug interdiction unit, and he had a drug sniffing dog in his patrol car. Based, in part, upon the conflicting statements by defendant and Mr. Napier regarding ownership of the car, he decided to take his dog around the car to determine whether it would alert, thereby indicating a presence of drugs. As he took the dog around the car, it jumped through the open driver's window and alerted on the front seat and ashtray.
By this time, another officer, Trooper Witmer, had arrived at the scene, and he and Trooper Farabaugh conducted a quick search of the interior of the car. Either during this search, or during a later search at the Medina Highway Patrol post, "both marijuana seeds and marijuana residue [were found] in the ashtray."
The officers attempted to open the trunk, but it was locked, and defendant and his companions claimed not to have a key. Mr. Kelly indicated that they had previously gained access to the trunk through use of a release button inside the glove box. When that button was pushed, however, the trunk did not open.
Believing that they had probable cause to search the trunk, and having no other way to enter it, the officers towed the vehicle to the Medina Highway Patrol Post, where they could, if necessary, employ a locksmith to open the trunk. At the patrol post, the officers conducted another search. This time, they discovered a small container of marijuana under the back seat. Mr Kelly admitted that the container was his. Defendant, Mr. Kelly, and Mr. Napier were all placed under arrest.
Following the arrests, Trooper Farabaugh once more took the drug dog around the car. This time, the dog alerted on the trunk. The officers again inspected the trunk release button in the glove box, then removed the glove box. They discovered that a wire running to the trunk was disconnected. After reconnecting it, the release mechanism worked and the trunk opened.
The officers searched the trunk and found approximately $75,000 cash, most of which was wrapped in a sleeping bag, a loaded semi-automatic handgun, a brick of marijuana wrapped in cellophane, and a small digital scale. Because of the holiday weekend, rather than having the car immediately towed to a storage yard, the officers secured it in the post garage. Two days later, during an inventory search in preparation for turning the car over to a tow truck operator, Trooper Witmer discovered several sheets of paper soaked in LSD under the carpet in the trunk. The sheets contained approximately 20,000 doses of LSD. On June 4, 1996, defendant and his companions were indicted for trafficking in drugs, a violation of Section 2925.03(A)(4) of the Ohio Revised Code, and aggravated trafficking in drugs, a violation of Section2925.03(A)(9) of the Ohio Revised Code.
On July 23, 1996, defendant moved for suppression of the evidence found in the searches of the car. Following a hearing on that motion, the trial court denied it. Defendant and his companions were tried together before a jury beginning January 14, 1997. On January 17, 1997, the jury found defendant guilty of both charges against him, and he timely appealed to this Court.
 II. A.
Defendant's first assignment of error is that the trial court incorrectly denied his motion to suppress evidence found during the initial searches of the car. He has argued that his detention after Sergeant Bittner issued the traffic citation to him was an illegal seizure and that, therefore, evidence discovered in the car during that detention should have been suppressed.
Defendant has pointed out that Sergeant Bittner had finished issuing him the traffic citation before Trooper Farabaugh had his dog sniff the car. In fact, Sergeant Bittner had actually told him that he was free to go. By the time of the dog sniff, however, the officers had sufficient reasonable articulable suspicion to seize defendant long enough to conduct the dog sniff. See Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889. By that time, Trooper Farabaugh had observed that Mr. Kelly and Mr. Napier were being very quiet and abruptly answering questions put to them. He testified at the suppression hearing that neither of them asked him why they had been stopped, which he considered unusual. Further, he had observed that defendant's posture changed and that he became more animated when he was asked about large sums of money, drugs, or weapons. Finally, Mr. Napier claimed that defendant was the owner of the car, while defendant claimed that Mr. Napier was the owner of the car. These factors established sufficient reasonable articulable suspicion to permit the officers to seize defendant and his companions for the time it took Trooper Farabaugh to get the drug dog from his cruiser and walk it around the car. Once the dog alerted on the car, the officers had probable cause to believe that it contained drugs, and they were justified in holding defendant and his companions while they searched the car. See State v. Carlson (1995),102 Ohio App.3d 585, 600. In view of the fact that it was impossible for the officers to complete the search of the car along the highway because defendant and his companion claimed not to have access to the trunk, the officers did not violate defendant's constitutional rights by transporting him to the Medina Highway Patrol Post. Defendant's first assignment of error is overruled.
 B.
Defendant's second assignment of error is that the trial court incorrectly failed to suppress statements that he made before and after his arrest. He has argued: (1) that any statement he made should have been suppressed because it was the fruit of his illegal detention; (2) that statements he made between the time Sergeant Bittner issued the traffic citation to him and his arrest should have been suppressed because he had not been provided a warning that those statements could be used against him; and (3) statements he made after his arrest should have been suppressed because he had invoked his right to counsel.
 1.
Defendant has argued that any statement he made should have been suppressed because it was the fruit of his illegal detention. As discussed in relationship with defendant's first assignment of error, defendant's detention was not illegal. Accordingly, any statements he made were not the fruit of an illegal detention. Defendant's first argument in support of his second assignment of error is without merit.
 2.
Defendant has argued that any statements he made between the time Sergeant Bittner issued the traffic citation to him and his arrest should have been suppressed because he had not been provided a warning that those statements could be used against him. Defendant, however, did not make any statements before being read his rights. Only after the troopers found the small container of marijuana and read defendant his rights did they proceed to question him about what might be in the trunk. Defendant was free to refuse to answer those questions or to invoke his right to an attorney. Defendant's second argument in support of his second assignment of error is without merit.
 3.
Finally, defendant has argued that statements he made after his arrest should have been suppressed because he had invoked his right to counsel. Once a suspect invokes his right to counsel, all interrogation must stop until counsel is provided or the accused reinitiates the conversation. State v. Dunlap (1995),73 Ohio St.3d 308, 313, citing Arizona v. Roberson (1988),486 U.S. 675, 677, 100 L.Ed.2d 704, 710-11. Contrary to defendant's assertion, once he invoked his right to counsel, he was not further interrogated.
Interrogation occurs when a police officer makes any statement that he should know is "reasonably likely to elicit an incriminating response." Rhode Island v. Innis (1980),446 U.S. 291, 301, 64 L.Ed.2d 297, 308. Defendant was questioned after the trunk of the car was opened and the officers discovered the brick of marijuana. He immediately invoked his right to an attorney. Trooper Farabaugh testified:
 After that, I turned, I was leaving the room * * * [and I said] just to inform you, you will be charged with an amount of drugs and drug trafficking, and he became very upset, said, what do you mean trafficking, that was our head smoke.
 I wasn't familiar with that term. I turned, I said, I am not familiar with that, and he said it was for use.
Further, before he left, Trooper Farabaugh heard defendant make a statement about a gun in the trunk. He could not hear defendant clearly, so he asked for clarification from another officer, "who was closer to the door when he said it." That officer said that defendant claimed ownership of the gun.
Trooper Farabaugh could not have expected or reasonably anticipated that his informing defendant of the charges that would be brought against him would elicit an incriminating response. Defendant's statements were volunteered and were not obtained in violation of his right to an attorney. His statements were, therefore, admissible. See Miranda v. Arizona (1966),384 U.S. 436, 478, 16 L.Ed.2d 694, 726 ("Any statement given freely and voluntarily without any compelling influences is * * * admissible"); Colorado v. Connelly (1986), 479 U.S. 157, 170,93 L.Ed.2d 473, 486 (suspect volunteered confession to police); andState v. Stamper (1986), 33 Ohio App.3d 104, 106 (statements made after defendant was informed of charge pending against him were not product of custodial interrogation). Defendant's third argument in support of his second assignment of error is without merit. Defendant's second assignment or error is overruled.
 C.
Defendant's third assignment of error is that the trial court incorrectly received testimony concerning the exercise of his constitutional rights. He has asserted that testimony regarding his refusal to consent to the car search, as well as testimony regarding his invocation of his right to an attorney, were incorrectly received by the trial court. According to defendant, when an accused asserts a constitutional right, such as the right to refuse consent to search or the right to an attorney, such assertion may not be used against him.
Assuming it was error to allow testimony concerning defendant's refusal to consent to the search of the car, its introduction in evidence was harmless beyond a reasonable doubt. See Rule 52(A) of the Ohio Rules of Criminal Procedure. Defendant was not prejudiced by the introduction of the isolated remark that, if he owned the car, he would not allow the officers to search it.
Further, assuming it was error to allow testimony concerning defendant's invocation of his right to counsel, that error was corrected by the trial court's giving of a curative instruction, telling the jury that it may not infer guilt or guilty knowledge from defendant's request for counsel. A jury is presumed to follow the trial court's instructions. State v. Garner (1995),74 Ohio St.3d 49, 59. Defendant's third assignment of error is overruled.
 D.
Defendant's fourth assignment of error is that the trial court incorrectly failed to suppress evidence introduced as a result of an illegal inventory search. Defendant has argued that the officers did not follow correct procedures in searching the car after it had been impounded for two days. Specifically, he has argued that the officer who performed the search did not have a witness as required by the regulations, did not document the items found in the search, and did not provide him with a list of the property discovered.
Defendant did not raise this argument in his motion to suppress, filed in the trial court prior to trial. In that motion, defendant questioned the legality of the detention of the vehicle after the traffic stop had been completed, the drug sniff by the officer's drug dog, the transportation of the vehicle back to the patrol post, and the initial search of the trunk. He did not question the inventory search. His failure to raise that argument in his motion to suppress, and to put forth the grounds upon which he relied to challenge the search, waived that issue for appeal. See Xenia v. Wallace (1988), 37 Ohio St.3d 216, 218. Defendant's fourth assignment of error is overruled.
 E.
Defendant's fifth assignment of error is that the trial court incorrectly failed to grant his motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure. He has argued that the evidence was insufficient to sustain his conviction because no evidence demonstrated that he knowingly possessed the drugs.
Rule 29(A) provides that the trial court "shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
Defendant was convicted of violating Section 2925.03(A)(4) of the Ohio Revised Code, knowingly possessing marijuana in an amount in excess of bulk amount but less than three times that amount, and Section 2925.03(A)(9) of the Ohio Revised Code, knowingly possessing LSD in an amount in excess of one hundred times bulk amount. Possession may be actual or constructive. State v. McShan
(1991), 77 Ohio App.3d 781, 783. Constructive possession is demonstrated if the drugs are in the defendant's dominion and control. Id.; State v. Wolery (1976), 46 Ohio St.2d 316, 332.
In this case, defendant was driving a car traveling from New York City to Arizona. Marijuana and LSD were found in the trunk of the car. See State v. Chapman (1992), 73 Ohio App.3d 132, 138
(a large amount of drugs discovered may reasonably lead to the conclusion that the driver knowingly possessed it). The trunk was locked and defendant and his companions asserted that no key existed. The trunk release in the glove box was disconnected. Yet, defendant and his companions admitted to having had access to the trunk. Defendant and Mr. Napier both denied ownership of the car, in what reasonably may have been considered by the jury as an attempt to distance themselves from the vehicle and its contents. When confronted with the marijuana and told that they would be charged with trafficking, defendant exclaimed that it was "our head smoke," implying ownership by all three. He also mentioned the gun before the officers told him that a gun had been found, providing the jury with evidence that he knew of and had access to the contents of the trunk. Viewing the evidence in a light most favorable to the prosecution, sufficient evidence existed to support the jury's verdict. A rational trier of fact could have found that defendant was part of a scheme to transport marijuana and LSD across country and that defendant had access to and knowingly possessed those drugs. Defendant's fifth assignment of error is overruled.
 F.
Defendant's sixth assignment of error is that the jury's verdict was against the manifest weight of the evidence. To determine whether a conviction is against the manifest weight of the evidence:
 [A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340; see, also,State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
Upon review of the record, and in light of the evidence discussed in defendant's preceding assignments of error, this Court cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that defendant's conviction must be reversed and a new trial ordered. Accordingly, the verdict was not against the manifest weight of the evidence. Defendant's sixth assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Medina Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
_________________________________
CLAIR E. DICKINSON
FOR THE COURT
QUILLIN, J.
REECE, J.
CONCUR.