[Cite as *State v. Taylor*, 2014-Ohio-5074.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. WD-13-044

    Appellee                                          Trial Court No. 2013CR0051

v.

Steven Taylor                                         **DECISION AND JUDGMENT**

    Appellant                                         Decided:  November 14, 2014

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Aaron T.
Lindsey and David T. Harold, Assistant Prosecuting Attorneys,
for appellee.

Eric Allen Marks, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Steven Taylor, appeals the June 11, 2013 judgment of

the Wood County Court of Common Pleas which, following a trial to the court and a

finding of guilt as to the charges of receiving stolen property and possession of criminal

tools, sentenced appellant to 11 months of imprisonment. Because we find that the court did not err, we affirm.

{¶ 2} On February 7, 2013, appellant was indicted on one count of receiving stolen property, R.C. 2913.51(A), (C), and one count of possession of criminal tools, R.C. 2923.24(A), (C). The charges stemmed from two incidents on January 19, 2013, involving the Findlay and Perrysburg, Ohio, Best Buy stores. Appellant entered not guilty pleas to the charges.

{¶ 3} The case proceeded to trial on March 22, 2013, and the following relevant evidence was presented. Perrysburg Township Police Officer, David Molter, testified that he responded to a call that a theft had occurred at Best Buy in Perrysburg, Wood County, Ohio. The suspects had left the store and Officer Molter observed the vehicle described by Best Buy's asset protection department pulling out of the parking lot. Molter testified that he followed the vehicle with an additional police cruiser behind him. Once the vehicle stopped he and the other officer, Officer Nixon, walked up to the vehicle and asked the driver to exit.

{¶ 4} The driver, identified as Jerimiah Johnson, exited the vehicle and was patted down for weapons. Appellant was the passenger in the vehicle. Officer Molter testified that he observed pills on the driver's seat which were later identified as oxycodone. Molter then observed needle-nosed pliers in the driver's door pocket. A search of the vehicle was then conducted. In addition to the pliers, officers found a large magnet on a key chain, a large pocket knife, and a razor blade.

2.

**{¶ 5}** On cross-examination, Officer Molter agreed that at no time was appellant in control of the vehicle. He further agreed that the pliers were in the driver's side door and the magnet was attached to the keychain containing the ignition key. Further, Molter stated that appellant sat quietly in the car; he made no statements or furtive movements. The driver, on the other hand, made some incriminating statements.

**{¶ 6}** Perrysburg Township Police Officer, James Nixon, testified next. Officer Nixon stated that after Officer Molter initiated the traffic stop, Nixon approached the driver's side and asked the driver to exit the vehicle. The driver did not immediately comply, instead he began "fidgeting" in the center console of the vehicle. The vehicle began rolling forward; it eventually stopped and Johnson exited.

**{¶ 7}** Officer Nixon similarly testified regarding the oxycodone pills, the pliers, knife and magnet. Nixon stated that the magnet is a tool commonly used to remove security wrap from an item in a store so the alarm does not go off when exiting. As to the knife and pliers, Nixon stated that they are tools commonly used to cut off tags or other wraps on merchandise.

**{¶ 8}** Officer Nixon testified that he searched the trunk of the vehicle and discovered two computer tablets and three Apple iPods all in their original packaging. They were not bagged and no receipts were found. Nixon testified that he took them to the Best Buy store to see if it they were taken from there. Nixon stated that he left them at the store.

3.

{¶ 9} Acacia Bland testified that she is the asset protection lead at the Best Buy in Findlay, Handcock County, Ohio. Bland stated that she received a call from the Perrysburg store regarding some items recovered from police. Bland checked the store inventory and determined that the items came from that store. The total value of the items, pre-tax, was $1,329.95. Bland testified regarding the video surveillance system at the store and a recording from the system. After getting a description of the suspects, Bland testified that she recovered a video recording which depicted appellant and Johnson entering the store and visiting the aisle where the items were stolen. Bland narrated the viewing of the video for the court; the disc was admitted into evidence. Bland stated that the cases and wrapping from the items were found discarded in multiple aisles. Bland stated that the two entered the store on January 19, 2013, at approximately 3:50 p.m., and left at approximately 4:00 p.m. They did not purchase anything while in the store.

{¶ 10} During cross-examination, Bland acknowledged that appellant and Johnson parted company for a good part of the time they were in the store. She also acknowledged that she never saw the stolen items in either appellant's or Johnson's hands.

{¶ 11} Danica Erdman testified that she is a sales associate at Best Buy in Perrysburg, Ohio. Erdman testified that on January 19, 2013, she observed two men in the MP3 or iPod area of the store. Erdman stated that appellant was standing up and was "blocking her" while the other man was kneeling down and "fidgeting" with the security

4.

device at the top of an iPod case. Specifically, Erdman stated that appellant was weaving back and forth in response to her movements. After offering help and being told it was not needed, Erdman, suspecting that a theft was in process, left to find her manager.

{¶ 12} During cross-examination, Erdman indicated that appellant's blocking or mirroring maneuver lasted approximately one and one-half to two minutes. Reviewing the security video, Erdman acknowledged that appellant weaved back and forth for approximately 15 seconds. Erdman explained that she was not visible in the video because, at only five-foot two inches, she was blocked by the shelves.

{¶ 13} Brandi Hintze, lead asset protection at the Perrysburg store, testified that on January 19, 2013, at approximately 5:00 p.m., the manager came into the security office and informed her that an employee felt that there was suspicious activity in the iPod department. Hintze then focused her video surveillance on that area. Hintze testified that she observed two men, one of whom was appellant, in the department. Continuing her live surveillance she observed the two talking together while looking at an iPod that Johnson had picked up. Johnson then put the iPod under his hat. Johnson also took an iPod and hid it under a sales advertisement. Once the men separated, Hintze stated that she chose to watch Johnson because he had the merchandise. Johnson walked over to the car audio department.

{¶ 14} Once Johnson was in the audio department, Hintze testified that she announced a "security page" over the loudspeaker in the hopes that he would abandon the merchandise. After Johnson failed to react to the page, Hintze decided to make contact

5.

with him and offer her assistance. When she arrived she found an iPod, minus its case, right where Johnson had been standing. Hintze stated that Johnson still had an iPod under the sales ad and was holding an iPod case. Johnson denied needing any help. Hintze stated that she left and called police.

{¶ 15} Continuing to observe Johnson, she watched him move to the CD aisle where he put down the iPod and the case. Hintze stated that she did not know where appellant was during this time. Johnson proceeded to the checkout, with a CD, where he reunited with appellant. He set the CD down and the two left the store.

{¶ 16} Hintze's testimony was accompanied by the surveillance video. Once the two left the store, Hintze stated that she visually observed them make a large detour to the right before coming back to the left to get in their vehicle.

{¶ 17} Hintze stated that the police eventually returned with iPod Nanos and computer tablets. After determining that they were not from the Perrysburg store's inventory she checked with local stores. Eventually, Hintze identified the merchandise as being from the Findlay store.

{¶ 18} On cross-examination, Hintze agreed that during her surveillance of Johnson, appellant left the store for eight to ten minutes and rejoined Johnson in the checkout line. Hintze also agreed that the appellant's alleged "blocking" of Erdman lasted only 15 seconds. Hintze also had no personal knowledge of the tools recovered in the vehicle Johnson was operating.

6.

{¶ 19} Hintze stressed that upon leaving the store, appellant and Johnson initially went in the "opposite direction" from the vehicle. Hintze stated that the two did not open the trunk prior to leaving.

{¶ 20} At this point, the state rested and trial counsel made a Crim.R. 29 motion for acquittal arguing that the state failed to prove complicity in the possession of criminal tools and receiving stolen property. The state countered that the fact that some of the tools were in plain view, combined with the suspicious activity of appellant, provided ample evidence that appellant was a part of the criminal activities. The court denied the motion.

{¶ 21} In rendering its decision, the court first noted that in a complicity charge, the state need not first establish that the principal has been charged with the offense. The court next determined that the fact that the criminal activity began in another county had no bearing on the ability to prosecute in a different county so long as there is a criminal connection to the charging county. Finally, the court determined that appellant and Johnson were together in the Findlay Best Buy, proceeded to Perrysburg, and were together for a time in Best Buy, which included appellant's attempt to block a sales associate from discovering their criminal act. Taken together, the court found appellant guilty of the crimes charged. The conviction was journalized on March 29, 2013.

{¶ 22} On June 11, 2013, appellant was sentenced to 11 months as to each charge to be served concurrently. This appeal followed.

{¶ 23} Appellant raises the following assignment of error for our review:

The trial court erred in finding appellant guilty of receiving stolen property and possession of criminal tools.

{¶ 24} In appellant's sole assignment of error, he raises two arguments. First, appellant contends that he could not be found guilty of complicity to the possession of criminal tools charge where the principal offender was never indicted for the offense. Next, appellant argues that his convictions were not supported by sufficient evidence.

{¶ 25} Regarding appellant's first argument, R.C. 2923.03 provides: "(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." Appellant contends that because this section only applies to *convictions*, the fact that Johnson had not been *charged* is a defense. We disagree.

{¶ 26} The Supreme Court of Ohio has stressed the lack of distinction between the culpability of the principal offender and the aider and abettor:

Each crime is equal in status and punishment, yet separate and distinct in identity. This allows, and even requires, the characterization of the aider and abettor as a principal offender. It is illogical to propose that the prosecution must show that the principal who is not on trial, violated the statute beyond a reasonable doubt. The issue at trial was not the absent principal's guilt, but rather the appellant's guilt. *State v. Graven*, 52 Ohio St.2d 112, 116, 369 N.E.2d 1205, 1208 (1977).

8.

**{¶ 27}** Citing *Graven*, this court has held that in order to convict a defendant as a complicitor, the state is not required to identify or charge an individual as the principal offender. *State v. Gowdy*, 6th Dist. Erie No. E-06-071, 2009-Ohio-385, ¶ 21. *Accord State v. Ojile*, 1st Dist. Hamilton Nos. C-110677, C-110678, 2012-Ohio-6015.

**{¶ 28}** Appellant next contends that his convictions for receiving stolen property and possession of criminal tools were not supported by legally sufficient evidence. In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found all the essential elements of the crime proven beyond a reasonable doubt. *State v. Jones* 90 Ohio St.3d 403, 417, 739 N.E.2d 300 (2000), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶ 29}** Whether the evidence is legally sufficient is a question of law, not fact. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review for sufficiency, courts do not assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Id.* at 390. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Consequently, a verdict will not be disturbed based upon insufficient evidence unless,

9.

after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001); *Jenks, supra*, at 273.

{¶ 30} In the present case, in order to convict appellant of receiving stolen property, R.C. 2913.51, the state was required to prove that appellant received, retained, or disposed "of property of another knowing or having reasonable cause to believe that the property ha[d] been obtained through commission of a theft offense." Also, as to appellant, they had to prove that the property involved was valued at more than $1,000.

{¶ 31} As to the possession of criminal tools charge, R.C. 2923.24, the state was required to prove that appellant possessed or had under his control "any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 32} Further, the complicity statute, R.C. 2923.03, prohibits a person "acting with the kind of culpability required for the commission of an offense" from aiding or abetting another in committing an offense.

{¶ 33} Regarding the receiving stolen property charge, at trial evidence was presented that appellant was with Johnson from their trip to the Findlay Best Buy through their arrest in Perrysburg. The items in the trunk came from the Findlay Best Buy; at that store, appellant entered and left with Johnson. Further, approximately 50 minutes had elapsed from the time they exited the Findlay store until the time they arrived at the Perrysburg store. Based on the distance between the two locations, the evidence established that they proceeded from Findlay, directly to Perrysburg. At the Perrysburg

store, appellant was with Johnson in the iPod aisle when he took two iPods. Appellant also attempted to block Johnson's activities from the view of the sales associate.

**{¶ 34}** Regarding the possession of criminal tools charge, it is well established that possession can be constructive or actual. Constructive possession is shown when a person "knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson,* 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. While close proximity to contraband is insufficient alone to prove constructive possession, it can be used as circumstantial evidence to establish constructive possession. *State v. Chapman,* 73 Ohio App.3d 132, 138, 596 N.E.2d 612 (3d Dist.1992). Constructive possession can be inferred from a totality of the circumstances. *State v. Norman,* 10th Dist. Franklin No. 03AP-298, 2003-Ohio-7038, ¶ 31.

**{¶ 35}** Viewing the evidence in a light most favorable to the state, we find that legally sufficient evidence was presented to demonstrate that the tools found in the vehicle were possessed by appellant and Johnson for use during the commission of the theft offense in Findlay and the attempted theft in Perrysburg. As detailed above, appellant was a partner in the criminal plan to steal electronics from the Best Buy stores; the use of the tools was an integral part of the execution of that plan.

**{¶ 36}** Based on the foregoing, we find no error in the state's prosecution of appellant for possession of criminal tools and appellant's convictions were supported by legally sufficient evidence. Appellant's assignment of error is not well-taken.

11.

{¶ 37} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Stephen A. Yarbrough, P.J.

_____
JUDGE

James D. Jensen, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.