Penny Elliott appeals her conviction for operating a motor vehicle under the influence ("OMVI"), a violation of R.C.4511.19 (A)(1), and assigns the following errors:
 Assignment of Error I: "The trial court erred in denying Elliott's motion to suppress where the state highway patrol officers did not have a reasonable suspicion of criminal activity based on articulable facts to justify the investigative stop."
 Assignment of Error II: "Elliott was denied effective assistance of trial counsel when counsel neglected to subpoena witnesses to testify in support of her defense."
Appellant was driving southbound on United States Route 23. She made a U-turn in front of State Highway Patrol Troopers Workman and Morehead and proceeded northbound on Route 23. After following appellant for approximately one mile, they stopped her. Trooper Workman noticed that appellant's eyes were glassy and bloodshot and that an odor of alcoholic beverage was coming from the vehicle. He then conducted field sobriety tests on appellant including a horizontal gaze and nystagmus test and the "walk and turn" test. Appellant was arrested for OMVI, given a ticket for violating R.C. 4511.35[2] and transported to the Waverly Police Department where she refused to submit to a breathalyzer test. After her arrest, appellant admitted that she had consumed some beer earlier in the evening and taken prescription pain-killers.
Appellant filed a motion to suppress, arguing that the officers did not have reasonable suspicion to stop her vehicle. After a hearing on the motion, the trial court overruled it. The appellee dismissed the charge of violating R.C. 4511.35
when it appeared from the testimony at the suppression hearing that the U-turn did not violate R.C. 4511.35. The OMVI charge was tried to the court and appellant was found guilty.
In her first assignment of error, appellant argues that the trial court erred by denying her motion to suppress. She contends that Trooper Workman did not have the reasonable suspicion of criminal activity necessary to stop her vehicle.
In a motion to suppress, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See,e.g., State v. Mills (1992), 62 Ohio St.3d 357, 366, citingState v. Fanning (1982), 1 Ohio St.3d 19, 20; see, also, Statev. Williams (1993), 86 Ohio App.3d 37, 41. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.Ornelas v. United States (1996), 517 U.S. 690, 134 L.Ed.2d 911;State v. Klein (1991), 73 Ohio App.3d 486, 488;Williams, Guysinger, supra.
The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures. Delaware v. Prouse (1979),440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660; Statev. Gullett (1992), 78 Ohio App.3d 138, 143. In Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514,19 L.Ed.2d 576, the United States Supreme Court held that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under theFourth Amendment — subject only to a few specifically established and well-delineated exceptions." See, also, Statev. Sneed (1992), 63 Ohio St.3d 3, 6-7; State v. Braxton (1995),102 Ohio App.3d 28, 36. The investigative stop exception to theFourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion, based upon specific and articulable facts, which, taken together with rational inferences from those facts, warrants the belief that criminal behavior has occurred, is occurring, or is imminent. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; United States v.Brignoni v. Ponce (1978), 422 U.S. 873, 95 S.Ct. 2574,45 L.Ed.2d 607; State v. Andrews (1991), 57 Ohio St.3d 86; Statev. Venham (1994), 96 Ohio App.3d 649, 654. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed, is committing, or is about to commit a crime. Whren v.United States (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89;Prouse, supra; Terry, supra. The propriety of an investigative stop must be reviewed in light of the totality of the circumstances. State v. Bobo (1988), 37 Ohio St.3d 177.
Appellant asserts that the stop was improper because the U-turn appellant made was lawful, that the other alleged traffic violations were "exceedingly minor" and not enough to justify the stop. Trooper Workman testified at the suppression hearing that at the time of the arrest he believed appellant had violated R.C. 4511.35, but that in fact, his suspicion ultimately proved to be incorrect. He also testified that appellant's vehicle partially went off the right side of the road when she executed the U-turn, crossed the center line two times and crossed the edge line three times, going over each line by about a tire width. Apparently, appellant strayed from her marked lane of traffic five separate times within one mile. That, coupled with the poor execution of the U-turn gave Trooper Workman specific and articulable suspicion warranting his belief that appellant had violated traffic laws in his presence. See, e.g., State v. Rusnak (1997), 120 Ohio App.3d 24, (initial stop based upon defendant weaving from his lane of traffic and onto side of roadway was valid). Thus, Trooper Workman had reasonable suspicion to stop appellant.
Appellant argues that her bad driving had innocent explanations, i.e., that she was tired and on pain medication, and it was dark and foggy. While any of the factors on which reasonable suspicion is based may not be proof of illegal conduct and be consistent with innocent activity, they can, taken together, amount to reasonable suspicion. United Statesv. Sokolow (1989) 490 U.S. 1. The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. The relevant inquiry in determining whether probable cause exists "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." Illinois v. Gates (1983), 462 U.S. 213,243-244. This concept applies equally to reasonable suspicion. The principal function of an investigative stop is to resolve the ambiguity of the actions and to establish whether the activity is, in fact, legal or illegal — to enable the police to quickly determine whether they should allow the suspect to go about his or her business or hold him or her to answer charges. See, 3 LaFave, Search and Seizure (1978), Section 9.3(a) at fn. 17, citing United States v. Gomez (C.A.5, 1985),776 F.2d 542 (simply because certain conduct may be consistent with innocent behavior does not mean that this conduct may not form the basis for reasonable suspicion). See, also, State v.Cunningham (May 2, 1995), Ross App. No. 94CA2023, unreported (Harsha, J., concurring). Moreover, the fact that the U-turn for which appellant was issued a ticket was later determined to be lawful does not vitiate the reasonable suspicion Trooper Workman had to stop appellant. There were other indicia that appellant operated her vehicle in a manner to support Trooper Workman's stop of appellant, i.e., she strayed from her marked traffic lane five times while traveling only a mile and poorly executed a U-turn.
Having found that Trooper Workman had the reasonable suspicion necessary to stop appellant, we find no error in the trial court's denial of appellant's motion to suppress and overrule appellant's first assignment of error.
In her second assignment of error, appellant argues that her counsel was ineffective because he failed to subpoena or call Cathy Maggard to the stand during her trial. Maggard was with appellant at several bars and restaurants before appellant was arrested and was a passenger when appellant was stopped.
Appellant asserts that Maggard could have presented the only eyewitness account of her conduct prior to her arrest and could have cooberated her testimony. She asserts that her counsel should have known that Maggard would have offered exculpatory testimony because she testified that Maggard was there the entire evening.
The proponent of an ineffective assistance of counsel claim must meet the two-part test of Strickland v. Washington (1984),466 U.S. 668 to prevail. State v. Taylor (1997), 78 Ohio St.3d 15. First, it must be proven that the attorney made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. Strickland; Taylor; State v. Awkal (1996),76 Ohio St.3d 324. In so proving, the proponent must show that counsel's representation fell below an objective standard of reasonableness. Strickland; Taylor. Second, and analytically separate is whether the defense at trial was prejudiced by counsel's ineffectiveness. Strickland; State v. Ballew (1996),76 Ohio St.3d 244. To show that a defendant has been prejudiced, the plaintiff must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. State v.Bradley (1989), 42 Ohio St.3d 136. If one component of theStrickland test disposes of the ineffectiveness claim, it is not necessary to address both components. Strickland; Bradley.
First we note that the assertions that Maggard's testimony would have been beneficial to appellant's case is not only speculative, but is not supported by the record. Factual assertions in an appellate brief are not part of the record and we may not consider them. See App. R. 9; App. R. 12. Therefore we cannot resolve appellant's ineffective assistance of counsel claim because it relies upon facts, i.e., what Maggard would have testified to had she been called, that are not in the record. State v. Cooperrider (1983), 4 Ohio St.3d 226, 228;State v. Fryer (1993) 90 Ohio App.3d 37, 48. Accordingly, we overrule appellant's second assignment of error.
Having overruled both of appellant's assignments of error, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Evans, J.:
Concur in Judgment and Opinion.
For the Court
 BY: ___________________________ William H. Harsha, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[2] R.C. 4511.35 provides in part:
 Whenever any highway has been divided into two roadways by an intervening space, or by a physical barrier, or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway, and no vehicle shall be driven over, across, or within any such dividing space, barrier, or section, except through an opening, crossover, or intersection established by public authority. * * *.