The STATE of Ohio, Appellee,

v.

FRYER, Appellant.

[Cite as *State v. Fryer* (1993), 90 Ohio App.3d 37.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62892.

Decided Aug. 23, 1993.

38

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Anthony J. Bondra,* Assistant Prosecuting Attorney, for appellee.

*David L. Doughten,* for appellant.

*John Fryer, pro se.*

Nugent, Judge.

The defendant-appellant, John Fryer (hereinafter "appellant"), appeals from his bench trial convictions for carrying a concealed weapon in violation of R.C. 2923.12 (Count One) and having a weapon while under the disability of a prior felony of violence conviction in violation of R.C. 2923.13 (Count Three). Each offense carried violence specifications, to wit: that appellant had two prior convictions for carrying a concealed weapon. Count Three also carried a firearm specification. The trial court dismissed the other count of the indictment, which consisted of a charge of possession of criminal tools with firearm and violence specifications (Count Two).

Appellant has filed a *pro se* brief in addition to the brief prepared and submitted by his appointed counsel. He submits a total of four assignments of error for our review:

### Argument of Counsel

"The evidence is insufficient to sustain convictions of carrying a concealed weapon and having a weapon while under a disability."

### Pro Se Arguments

"I. Appellant was denied effective assistance of counsel by the acts and omissions of his attorney at trial, in violation of the Sixth and Fourteenth

Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

"II. Appellant was denied effective assistance of counsel due to a conflict of interest of counsel represent to opposing paritys. [*Sic.*]

"III. Prosecution misconduct denied defendant of material testimony which could have provided alibi for defendant."

## I

The evidence adduced at trial revealed the following:

In the evening of October 23, 1989, at approximately 8:00 p.m., Cleveland Police Detectives Artara Adams and Keith Thompson responded to a radio broadcast of gunshots being fired in the high-crime area of East 120th Street and Kelton Avenue in Cleveland, Ohio. Both officers testified that upon their arrival at the scene, they saw two males standing in the street. One of the males was identified as appellant; the other male was identified as Leroy Jones. The officers exited their automobiles, drew their weapons, identified themselves, and patted the two males down for their safety.

Detective Adams testified that during the pat-down search of appellant, he discovered a .38 caliber firearm on appellant's person. Detective Adams stated that the firearm was not visible to him as he approached appellant. Detective Adams further stated that after appellant was placed under arrest and advised of his constitutional rights, which appellant indicated he understood, appellant told the officers that there was another firearm in the area. Appellant then directed the officers to this second firearm, a .25 caliber automatic, which the officers confiscated. Appellant was not charged with possession of this second firearm.

Detective Thompson corroborated the testimony of Detective Adams and further testified that at the time of his arrest, appellant was wearing a bullet-proof vest.

The firearms were taken to the police station, where they were marked, tagged and entered into the property book. The evidence was then taken to the county property room at the Justice Center, where it was held until trial. On the morning of the first day of trial, the firearm found on appellant's person was taken to the Cleveland Police Department's Scientific Investigation Unit, where it was test-fired to determine its operability. The firearm was test-fired in the presence of Detective Adams, and it was conclusively determined to be operable and capable of firing a bullet.

The defense presented at trial was that appellant's niece saw the firearm lying outside the building where she lived and that appellant picked the firearm up

before the police arrived to protect his sister's family and bystanders from the unattended firearm.

Appellant's sister, Mrs. Barbara Marshall, testifying for the defense, stated that on October 23, 1989, appellant was staying with her and her children while her husband was in the hospital. Mrs. Marshall testified that sometime during that evening, she was in her residence with appellant and her children when she heard several youths fighting in front of the building where she lived. She stated that when shooting began, appellant instructed her and the children to lie on the floor. Mrs. Marshall testified that after the shooting stopped, she, her daughter Shante and appellant stood on the porch to watch what was going on. Mrs. Marshall stated that while they were on the porch, Shante spotted a firearm lying on the ground by some bushes. She said that appellant went to where the firearm was lying on the ground and that the police arrested appellant "just as he was getting ready to bend over and *look* at the gun." (Emphasis added.) Mrs. Marshall stated that appellant did not pick up the firearm that was lying on the ground. Mrs. Marshall did not know whether appellant was carrying the firearm the police found on his person.

Appellant's niece, Ms. Shante Marshall, also testified as a witness for the defense. Ms. Marshall testified that on October 23, 1989, at approximately 8:00 p.m., several youths from the neighborhood were fighting outside the building where she lived. Ms. Marshall stated that after the shooting stopped, she stood on the outside porch and observed the boys running down the street. Ms. Marshall also observed appellant go outside and search the area near the building where she lived. Ms. Marshall testified that while she was outside on the porch, she saw a small firearm lying on the ground alongside the building. Ms. Marshall believed that the boy who had fired the weapon had thrown the firearm when he heard police sirens. Ms. Marshall said that she pointed the firearm out to appellant, but that he did not pick the firearm up. Ms. Marshall stated that the police then arrived and arrested appellant on the side of the building. Ms. Marshall had not seen a firearm on appellant's person at any time on October 23, 1989.

Taking the witness stand on his own behalf, appellant sought to convince the trier of fact that the firearm the detectives found on his person was one he found outside the building where his sister and her children lived. Appellant maintained that he picked the firearm up to protect his sister's family and bystanders from the unattended firearm.

Appellant testified that after the shooting stopped, he crawled to a window, where he observed several boys running down the street. Appellant, who claimed to have seen one of the boys throw something, said he then went outside to search the area. According to appellant, while he was outside searching the

area, he heard his niece shout, "There is a gun over there, a gun over there." Appellant said he went to where his niece directed him and observed two firearms lying on the ground between a truck and some bushes. Appellant said he picked up one of the firearms and told an acquaintance whom he knew only as "Meat Man" and another gentleman, identified in the record only as "Norman," that he was going to give the firearms to the police when they arrived. Appellant claimed that as soon as he went to pick up the second firearm, the police arrived and arrested him. Appellant testified that he attempted to explain to the police that he had found the gun, but that they would not listen to him. Appellant claimed that when he told the detectives there was another firearm in the area, they told him to get the firearm and bring it back to them. Appellant further claimed the street was full of people when the police arrived at the scene.

## II

Appellant, in the brief filed by his appointed counsel, challenges his convictions for carrying a concealed weapon and having a weapon while under a disability as against the manifest weight of the evidence. Specifically, appellant insists that he was erroneously convicted of both charges since the weight of the evidence at trial established that he acted with a good motive in picking up the unattended firearm and that he was, therefore, justified in his possession of the firearm.

Generally, the credibility of witnesses and the weight of the evidence are matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. "An appellate court's function when reviewing the [weight or] sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average man of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Franklin* (1991), 62 Ohio St.3d 118, 580 N.E.2d 1; *State v. Chapman* (1992), 73 Ohio App.3d 132, 596 N.E.2d 612. Where the appellate court determines that there is sufficient probative evidence to support the findings of a trier of fact, it should affirm the conviction. *State v. Jenks, supra,* 61 Ohio St.3d at 283, 574 N.E.2d at 509. Moreover, where reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact. It is not the function of an appellate court to substitute its judgment for that of the factfinder. Rather, upon appellate review, the evidence must be viewed in a light most favorable to the prosecution. *State v. Jenks, supra.*

The carrying of a firearm while under disability is prohibited by R.C. 2923.13, which provides, in pertinent part, as follows:

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly, acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

" * * * *

"(2) Such person is under indictment for or has been convicted of any offense of violence, or has been adjudged delinquent for commission of any such felony;

" * * * *

"(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the fourth degree."

Appellant does not dispute the fact that on October 23, 1989, he was under disability from having or carrying a firearm due to the fact that he had two prior convictions for carrying a concealed weapon, an offense of violence. Instead, appellant, relying on the justification defense to carrying a concealed weapon, R.C. 2923.12(C)(2) and this court's decision in *State v. Hardy, infra,* asserts that under the circumstances presented in this case, he was justified in picking up the unattended firearm. Essentially, appellant argues that his version of the events is more credible than that of the other witnesses who testified at trial. We do not agree.

To begin with, appellant's reliance on R.C. 2923.12(C)(2), the justification defense to carrying a concealed weapon, is misplaced. R.C. 2923.12(C)(2) specifically states that "[i]t is an affirmative defense to a charge *under this section of carrying or having control of a weapon* * * * that the actor was not otherwise prohibited by law from having the weapon and * * * the weapon was carried or kept ready at hand for defensive purposes * * *." (Emphasis added.) By its language, R.C. 2923.12(C) makes it clear that R.C. 2923.12(C)(2) applies only to a charge of carrying a concealed weapon under R.C. 2923.12 and is not available as a defense to a charge under any other section, including a charge of carrying a firearm while under disability, in violation of R.C. 2923.13.

Appellant's reliance on this court's decision in *State v. Hardy* (1978), 60 Ohio App.2d 325, 14 O.O.3d 289, 397 N.E.2d 773, in further support of his argument that he was legally justified in picking up the firearm, is also misplaced. In *Hardy,* the defendant was charged with having a weapon while under a disability, in violation of R.C. 2923.13. He was working in a beverage store when he was approached by another employee of the store who claimed to need money for rent. Hardy told the employee that even though it was not payday, he would give him an advance at the end of the day. The employee was not satisfied, and an altercation ensued that resulted in Hardy picking up a rifle located in the corner and wounding the employee. In reversing Hardy's conviction, this court determined that the prohibitions of R.C. 2923.13 do not eliminate the right of an

individual to defend himself against an immediate threat of deadly force when he did not knowingly acquire, have, carry or use the firearm previously. This court reasoned as follows:

"The facts in the case at bar demonstrate only that appellant, along with other employees, had knowledge of and physical access to a loaded rifle. The record fails to disclose any evidence demonstrating that appellant ever exercised dominion or the sort of control over the weapon that comes with ownership or actual possession. Nor was there a showing that the unidentified owner had ever given appellant permission to use the weapon. [Fn. 3, *infra.*]"

"[Fn. 3.] The record does not contain any direct evidence of ownership, possession or control of the weapon by the appellant. The extent of the circumstantial evidence is contained in a statement made by appellant to the police in which he admitted knowledge that the rifle was 'always ready to fire.' This evidence, however, is insufficient on which to base a finding that the weapon was actually or constructively possessed by the appellant. There are other reasonable explanations for knowledge concerning the readiness of the rifle for firing; *e.g.*, he could have been informed of this fact by the store owner, or he may have seen the owner or other employees use the weapon.

"It may well be that if further evidence had been adduced, the prosecutor could have developed a case establishing that appellant 'had' the weapon. However, with the record in this posture, such a conclusion is not the only reasonable inference which could be drawn." *Id.*, 60 Ohio App.2d at 327, 14 O.O.3d at 290, 397 N.E.2d at 775.

The so-called self-defense exception to the charge of carrying a weapon while under disability is an extremely narrow exception. Implicit in this court's decision in *Hardy* is the recognition that all individuals, including those under disability, have a right to defend themselves against an immediate threat of deadly force, provided, however, they did not knowingly acquire, have, carry or use the firearm previously.[1] We have found no authority in Ohio, or from any other jurisdiction for that matter, extending such an exception to the protection of others. Nor are we inclined, under the facts of the present case, to recognize such an exception. Indeed, the record is devoid of evidence indicating that there was an immediate threat of harm to anyone. Contrarily, there was ample evidence from which a rational trier of fact could find, beyond a reasonable doubt, that appellant did not pick up the firearm to protect his sister, her family or bystanders from an unattended firearm, but, rather, that he carried the firearm for his own purposes. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

---

1. Several jurisdictions do not accept this position and have refused to recognize such an exception to a charge of carrying a weapon while under a disability.

Both Detective Adams and Detective Thompson testified that when they arrived on the scene, appellant and Leroy Jones were the only people standing in the street. A pat-down search was conducted, and a firearm was found on appellant's person. Although appellant maintained that the firearm the detectives found on him was the one his niece discovered on the side of the building, both appellant's sister and his niece testified that appellant *did not* pick up the firearm the niece discovered alongside the building. Further, appellant testified that he was staying with his sister and her family to protect them while the sister's husband was in the hospital. Both appellant and his sister testified that there were often fights and other illegal activities taking place outside the building where the sister lived. This testimony, conjoined with the testimony of Detective Thompson that at the time of his arrest, appellant was wearing a bullet-proof vest, could reasonably support the conclusion that the firearm found on appellant's person was not the one found by his niece, but, rather, one appellant armed himself with when he decided to move in with his sister and her family to protect them while the sister's husband was in the hospital.

Accordingly, after viewing the evidence in a light most favorable to the prosecution, we find nothing to disturb the trier of fact's apparent conclusion that appellant carried or had the firearm within the meaning of R.C. 2923.13.

With regard to the charge of carrying a concealed weapon, appellant insists that he was erroneously convicted since the preponderance of the evidence established that he proved the affirmative defense of justification. R.C. 2923.-12(C)(2).

The carrying of a concealed weapon is prohibited by R.C. 2923.12(A), which provides:

"No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance."

The justification defense relied upon by appellant is set forth in R.C. 2923.-12(C)(2) as follows:

"It is an affirmative defense to a charge under this section of carrying or having control of a weapon other than dangerous ordnance, that the actor *was not otherwise prohibited by law from having the weapon,* and that any of the following apply:

" * * *

"(2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while he was engaged in a lawful activity, and had reasonable cause to fear a criminal attack upon himself or a member of his family, or upon his home, such as would justify a prudent man in going armed." (Emphasis added.)

■ Proof of justification under R.C. 2923.12(C)(2) requires the defendant to establish, by a preponderance of the evidence, (1) that he was not otherwise prohibited by law from having the weapon, *i.e.*, that he was not under a disability from carrying a weapon, (2) that the weapon was carried or kept ready at hand for defensive purposes, and (3) that the circumstances in which the defendant was placed were such as would justify a prudent person to carry a weapon for the defense of his person, family or home.

■ The first requirement of the justification defense—that the defendant not be otherwise prohibited by law from having the weapon—is a restriction as to the class of persons who may claim such a defense in carrying a concealed weapon cases. In this case, appellant stipulated to the fact that he had two prior convictions for carrying a concealed weapon. As a consequence, appellant was otherwise prohibited by law from having a firearm and has failed to satisfy the first requirement of his justification defense.

■ Nor are we persuaded, as argued for by appellant, that the rule of *Hardy* should be extended to a charge under R.C. 2923.12. R.C. 2923.12 clearly sets forth a justification defense, invocation of which requires that the defendant not otherwise be prohibited by law from carrying a weapon. This court has no authority to let in through the back door what the legislature has deliberately locked out the front door.

■ Thus, from a review of all the evidence, this court finds there was sufficient, competent and credible evidence going to each and every element of the charge of carrying a concealed weapon which, if believed, could convince the average mind that appellant was guilty beyond a reasonable doubt.

Accordingly, we overrule appellant's first assignment of error in his assigned counsel's brief.

### III

In his first, second and third assigned errors of his *pro se* brief, appellant asserts that he was denied effective assistance of counsel and that the prosecutor committed prosecutorial misconduct. Appellant claims that his attorney was ineffective in two instances: (1) that the attorney failed to call two critical eyewitnesses to testify; and (2) that the attorney was encumbered by a conflict of interest at the time of trial. With regard to appellant's claim of prosecutorial misconduct, appellant contends that the prosecutor, along with strike force personnel, deliberately placed a "potential" witness into a treatment facility to prevent the witness from testifying at trial.

■ After careful review of the record, we conclude that it is impossible for this court to determine whether appellant was prejudiced as a result of ineffective assistance of counsel or prosecutorial misconduct. The record on appeal does not reveal whether the noted witnesses would have aided appellant, or whether these witnesses were in a position to observe the events of October 23, 1989, let alone whether their testimony would contradict that of the arresting officers. Further, the record does not contain any facts revealing the conflict of interest cited by appellant in his trial counsel's representation of Earl Modon. Consequently, we have no basis in the record to evaluate appellant's prosecutorial misconduct claim or his claims of ineffective assistance of counsel.

■ Where an appellant's claims of ineffective assistance of counsel or prosecutorial misconduct are based upon facts which are not present in the record, the appropriate remedy is a proceeding for post-conviction relief under R.C. 2953.21. *State v. Booker* (1989), 63 Ohio App.3d 459, 579 N.E.2d 264, paragraph two of the syllabus; *State v. Workman* (Mar. 24, 1988), Cuyahoga App. No. 53581, unreported, 1988 WL 35272; *State v. Parker* (Apr. 15, 1987), Defiance App. No. 4–85–16, unreported, 1987 WL 10176; *State v. Watkins* (Oct. 26, 1987), Montgomery App. No. 10252, unreported, 1987 WL 18832; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 4 OBR 580, 448 N.E.2d 452.

In *State v. Cooperrider, supra,* the Ohio Supreme Court held:

"It may be that in the present case appellant can allege sufficient facts to state a claim of ineffective assistance of counsel. However, it is impossible to determine whether the attorney was ineffective in his representation of appellant where the allegations of ineffectiveness are based on facts not appearing in the record. For such cases, the General Assembly has provided a procedure whereby appellant can present evidence of his counsel's ineffectiveness. This procedure is through the post-conviction remedies of R.C. 2953.21. This court has previously stated that when the trial record does not contain sufficient evidence regarding the issue of competency of counsel, an evidentiary hearing is required to determine the allegation. *State v. Hester* [ (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304], *supra.* Such a hearing is the proper forum for appellant's claim." *Cooperrider, supra,* 4 Ohio St.3d at 228, 4 OBR at 582, 448 N.E.2d at 454.

Likewise in this case, the evidence supporting appellant's allegations of ineffective assistance of counsel and prosecutorial misconduct are outside the trial record, and the proper procedure is for appellant to file a motion for post-conviction relief.

Accordingly, we overrule appellant's first, second and third assignments of error in his *pro se* brief and affirm the judgment of the trial court.

*Judgment affirmed.*

DYKE, C.J., concurs.

JOHN F. CORRIGAN, J., concurs in judgment only.