OPINION
Appellant, Jonathan C. Songer, appeals from his conviction on one count of vandalism and one count of theft. For the reasons that follow, we affirm appellant's convictions.
The following facts are relevant to a determination of this appeal. On July 23, 1997, appellant and a friend were attempting to collect metal that they could sell for scrap. They went to the Forest Atlantic Corporation ("Forest Atlantic") in Warren, Ohio, and asked two employees if they could cut and/or remove what appeared to be some railroad scrap metal from behind their building, adjacent to the railroad tracks. Apparently, the employees told appellant that the scrap in question did not belong to Forest Atlantic.
Accordingly, appellant went behind the building to where the railroad tracks were located. He noticed a train that had passed by so he went to talk to the engineer, Jonathan Miller, who was employed by Ohio Central Railroad Systems ("OCRS"). Appellant claimed that he asked Miller about the scrap metal and that Miller responded by telling him that he could take it. Miller claimed, however, that appellant only asked him if he could work behind the Forest Atlantic building adjacent to the railroad tracks. Miller told appellant that he could work behind the building but denied giving him permission to remove anything from the area behind Forest Atlantic.
After speaking with Miller, appellant began gathering the scrap metal. The scrap consisted of various pieces of straight rail, railroad spikes, a steel plate, a block signal mast, and three crossing diamonds. Crossing diamonds are specially manufactured items that are used where two or more sets of railroad tracks intersect. They are made of carbonized steel and must be custom built to fit the exact angles of a particular intersection. Evidence was presented that a new crossing diamond was valued at approximately $60,000, while a used but completely assembled crossing diamond was valued at approximately $20,000. Additionally, a steel plate was worth between $125 and $150, while cut straight rail was worth $180 per ton. These pieces were owned by OCRS.
Since the crossing diamonds were very heavy, appellant used a torch to cut off the ends of one of them. Appellant also began cutting up the steel plate. He loaded the portions he had cut into the back of his pick-up truck. After approximately two to three hours, appellant was approached by Terry L. Feichtenbiner, general manager of OCRS, who was spraying for weeds along the railroad tracks.
According to Feichtenbiner, appellant and another man were using a torch to cut up one of the crossing diamonds. When he asked them who they worked for, they replied "Wintrow Construction." Appellant stated that they were cutting up the steel in order to transport it somewhere else. Feichtenbiner was familiar with Wintrow Construction and its owner, Lanny Wintrow. They specialized in railroad construction projects.
Appellant, on the other hand, claimed that Feichtenbiner asked him on what authority he was there. He answered that he was working for the Wintrow Corporation. Although appellant admittedly did not work for the Wintrow Corporation, he claimed that a man named "Jim," who was driving a Wintrow Corporation truck, had given him permission to clean up the "junk" in that area. In response, Feichtenbiner telephoned the Warren City Police which dispatched Patrolman Gary Riggins to the scene. Upon his arrival, he spoke with appellant. Patrolman Riggins claimed that appellant told him that he had contracted with Forest Atlantic to do "cleaning up" behind their building. Specifically, appellant stated that someone named "Dave" at Forest Atlantic had given him permission to work behind the building.
Subsequently, on August 2, 1997, appellant was arrested on warrants charging theft and vandalism. Then, on December 8, 1997, appellant was indicted by the Trumbull County Grand Jury on one count of grand theft in violation of R.C. 2913.02(A)(1) and (B), a fourth degree felony, and on one count of vandalism in violation of R.C. 2909.05(B)(1)(a) and (E), also a fourth degree felony. After appellant pleaded not guilty to the charges, the matter proceeded to a jury trial on May 11, 1998. On May 20, 1998, appellant was found guilty of both theft and vandalism, but of lesser fifth degree felonies, with a specific finding that the value of the property stolen and/or destroyed was in excess of $500 but less than $5,000. On June 1, 1998, appellant was sentenced to serve twelve months on each count, to run concurrently to each other.
On June 8, 1998, appellant filed a motion for a new trial in addition to a notice of appeal. On July 20, 1998, the trial court denied appellant's motion for a new trial. On September 14, 1998, appellant filed another motion for a new trial. Appellant has now set forth the following assignments of error:
 "1. The evidence was insufficient as a matter of law to sustain a guilty verdict as the evidence was legally inadequate to prove beyond a reasonable doubt the elements of felony theft or vandalism and was inadequate to support the jury's valuation placed on the material.
 "2. The jury's verdict was against the manifest weight of the evidence and is the result of a compromise, amongst the jury and lack [sic] sufficient factual support to sustain the verdicts.
 "3. The trial court erred, to the prejudice of the appellant, by failing to rule on appellant's motion for a new trial.
 "4. The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution.
 "5. The trial court abused its discretion by allowing the jury to reread partial transcripts of Jonathan Miller and the appellant."
In the first assignment of error, appellant contends that the evidence was insufficient to sustain guilty verdicts on both counts, and that the evidence was inadequate to support the jury's valuation on the railroad material. Within the first assignment of error, appellant has set forth various subissues for this court's consideration.
First, appellant asserts that the evidence was insufficient to prove that he was guilty of the fifth degree felonies of theft and/or vandalism. Specifically, appellant claims that there was absolutely no evidence introduced by either party to support the conclusion that the value of the property damaged and/or stolen exceeded $500 but was less than $5,000, as is required by the pertinent statutes. "A challenge to the sufficiency of the evidence is quantitatively and qualitatively different from a challenge to the weight of the evidence." State v. Longmire (Dec. 19, 1997), Portage App. No. 97-P-0024, unreported, at 3. This difference has been explained by the Supreme Court of Ohio inState v. Thompkins (1997) 78 Ohio St.3d 380, at 386:
 "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148."
In the present case, the state presented evidence that the value of steel rail was $280 to $320 per ton, while the value of the scrap steel found in a plate was approximately $180 per ton. The state's witness estimated that appellant had between $125 and $150 worth of straight rail and, at most, $45 worth of scrap steel in the plate.
Appellant testified that he could sell scrap metal for $90 per ton and that on a "good day," he could make $200. However, the testimony regarding the value of scrap metal is irrelevant as it relates to the crossing diamonds due to the law in Ohio regarding the value of stolen property. Pursuant to R.C.2913.61(D)(2):
 "[t]he value of * * * materials, supplies, equipment, and fixtures used in the profession, business, trade, occupation, or avocation of its owner, * * * which retains substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind and quality." See, also, State v. Bolden (Aug. 15, 1996), Cuyahoga App. No. 69585, unreported, 1996 WL 465365, at *4.
Thus, when deciding on the value of the crossing diamonds, the only relevant inquiry is "what would it cost the railroad to replace those diamonds with new diamonds of like kind and quality?" The only evidence introduced at trial on this subject was through two witnesses called by the state, Terry Feichtenbiner and Lanny Wintrow. Both testified that the replacement value for a new crossing diamond was $60,000. They also agreed that a used one would cost approximately $20,000. However, they also testified it is extremely difficult to find a used one that would meet the exact measurements, including the same angles, as the one that was destroyed. Accordingly, the uncontroverted evidence was that the crossing diamond had a value of at least $20,000 and possibly as much as $60,000 based upon the statutory definition of "value." Thus, a conviction on the theft of the crossing diamond would have warranted at least a fourth degree felony if the state's witnesses were found to be credible.
Conversely, all of the evidence presented at trial regarding the value of the items allegedly stolen and/or vandalized by appellant in terms of their scrap value was that the metal was worth less than $500.
However, the jury, as trier of fact, weighs the evidence and determines the credibility of the witnesses. While there was no specific evidence presented that the actual value was between $500 and $5,000, there was evidence that the value could be anywhere from less than $500 to more than $5,000. Under such circumstances, we will not substitute our judgment for that of the trier of fact. The jury simply believed that the true value of the stolen and/or vandalized items fell between the low estimates and the high estimates. While we may not be privy to the exact reasoning of the jury, there was legally sufficient evidence to support their verdict.
The second issue presented by appellant within his first assignment of error is whether it was error for the trial court to overrule his motion for acquittal pursuant to Crim.R. 29. Appellant argues that because theft and vandalism are allied offenses of similar import, they should have been merged pursuant to R.C. 2941.25, which provides:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
The Supreme Court of Ohio has developed a two-tiered test to determine whether two crimes are allied offenses of similar import. In State v. Blankenship (1988),38 Ohio St.3d 116, the court held:
 "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses." (Emphasis sic.) Id. at 117; see, also, State v. Powell
(1990), 49 Ohio St.3d 255, 261-262.
In the present case, appellant was charged with theft and vandalism. The theft statute, R.C. 2913.02, provides, in relevant part:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 "(1) Without the consent of the owner or person authorized to give consent;"
The vandalism statute, R.C. 2909.05, states, in pertinent part:
 "(B)(1) No person shall knowingly cause serious physical harm to property that is owned or possessed by another, when either of the following applies:
 "(a) The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is five hundred dollars or more;"
It is clear that the elements of the two offenses are different. The theft statute requires that the person exert control over the property of the owner, while the vandalism statute requires that the person cause physical harm to the property of the owner. The commission of one crime will not necessarily result in the commission of the other. See State v. Vukelich
(Apr. 8, 1987), Summit App. Nos. 12578 and 12628, unreported. Thus, the first tier of the Blankenship
test is not met and, consequently, we need not proceed to the second tier. Hence, appellant's second argument within his first assignment of error is also without merit.
In the third issue raised within his first assignment of error, appellant submits that there was insufficient evidence to establish that he "exerted control" over the railroad's property. Specifically, appellant argues that he never tried to move the crossing diamonds but, instead, merely cut the ends off of the rails for scrap.
We disagree. In the instant cause, without bringing in a crane, appellant was unable to lift or move a crossing diamond due to its weight. The only way for appellant to exert control over the railroad's property was to cut it into smaller pieces and load the pieces into his truck. That is exactly what appellant was doing when he was stopped by the police. Therefore, there was sufficient evidence to establish that appellant exerted control over the railroad's property.
In the last issue raised by appellant within his first assignment of error, he maintains that there was insufficient evidence to establish that the property was used in the owner's business as is required for a conviction under the vandalism statute. Appellant claims that the fact that the crossing diamonds were amongst the weeds, partially covered with dirt, had not been used for approximately twenty years, and there were no immediate plans for their use, shows that this property was nothing more than scrap and did not qualify as property that is used in the owner's business.
While by all appearances, the items in question may have looked like scrap to an untrained eye, evidence introduced at trial established that the useful life of steel railroad tracks was at least sixty years. Thus, even though the materials were not presently being used by the railroad, there is no question but that they could still be used well into the future and were valuable assets of their owner. Accordingly, there was sufficient evidence that the property was still used in the owner's business so as to satisfy R.C. 2909.05(B)(1)(a).
Based upon the foregoing analysis, appellant's first assignment of error is without merit.
In the second assignment of error, appellant asserts that the jury's verdict was against the manifest weight of the evidence and was the result of a compromise. Essentially, appellant repeats the first argument he made within his first assignment of error except for replacing "sufficiency of the evidence" with a "manifest weight" analysis.
The standard for reviewing a conviction on a manifest weight basis was set forth by this court in State v. Schlee (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, at 11:
 "`[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence of each element of the offense.
 "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) (t)he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' * * *" (Citations omitted and emphasis sic.) See, also, Thompkins, 78 Ohio St. 3d at 387.
After reviewing the record, it is clear that the jury's verdict was not against the manifest weight of the evidence. There was evidence presented that equipment belonging to the railroad which may have been worth upwards of $120,000 was cut apart by appellant and placed in the back of his pick-up truck. He had the clear intention of removing the property from where he found it and selling it as scrap metal. In light of this evidence, we do not conclude that the jury lost its way or created a manifest miscarriage of justice such that would entitle appellant to a new trial.
Hence, appellant's second assignment of error is without merit.
In the third assignment of error, appellant contends that the trial court erred by failing to rule on his motion for a new trial filed June 8, 1998. However, a review of the trial court record reveals that the trial court ruled on appellant's motion for a new trial on July 20, 1998. Appellant's motion was denied. Accordingly, appellant's third assignment of error is without merit.
In the fourth assignment of error, appellant asserts that he received ineffective assistance of counsel in violation of theSixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution. Specifically, appellant argues that his trial counsel was ineffective because he failed to call certain witnesses who would have provided testimony beneficial to his case.
It is apparent, however, that it is impossible for this court to determine whether or not appellant was prejudiced by his counsel's failure to call certain witnesses because this court has no way of knowing whether these witnesses actually exist or what their testimony would be. These critical facts are not part of the record before us. Consequently, we have no basis to evaluate appellant's claim in this regard.
Ohio courts have consistently held that when an appellant makes a claim of ineffective assistance of counsel based upon facts which are outside of the record, the appropriate remedy is a postconviction relief petition pursuant to R.C. 2953.21. State v.Cooperrider (1983), 4 Ohio St.3d 226, 228; State v. Fryer (1993),90 Ohio App.3d 37, 48; State v. Bleasdale (Sept. 6, 1996), Ashtabula App. No. 95-A-0047, unreported, at 12-13.
Thus, appellant's remedy is in the form of a postconviction relief petition where the trial court would have the proper means to make an informed decision. Appellant's fourth assignment of error is without merit.
In the fifth assignment of error, appellant contends that the trial court abused its discretion by allowing the jury to reread partial transcripts of the testimony of two witnesses.
It is apparent that after the jury had deliberated for a number of hours, they asked the trial court to answer specific questions regarding the specific testimony of two witnesses. The court, however, declined to give partial portions of the transcript as requested by the jury but, instead, had transcripts prepared of the entire testimony of those two witnesses and gave those to the jury.
The Supreme Court of Ohio has held:
 "After jurors retire to deliberate, upon request from the jury, a court in the exercise of sound discretion may cause to be read all or part of the testimony of any witness, in the presence of or after reasonable notice to the parties or their counsel." State v. Berry
(1971), 25 Ohio St.2d 255, paragraph four of the syllabus.
Thus, it is within the discretion of the trial court to permit the jury to rehear all or part of the testimony of any witness. State v. Weind (1977) 50 Ohio St.2d 224,240. Appellant has failed to demonstrate that the trial court's decision was unreasonable, arbitrary, or unconscionable in this regard. Accordingly, appellant's fifth assignment of error is without merit.
Based upon the foregoing analysis, the judgment of the trial court is hereby affirmed.
CHRISTLEY, P.J., NADER, J., concur.