JOURNAL ENTRY and OPINION
{¶ 1} Littrell Chapman appeals from a Cuyahoga County Court of Common Pleas jury verdict finding him guilty of aggravated murder with a firearm specification and aggravated robbery with a firearm specification. Chapman assigns the following as errors for our review:
 {¶ 2} "Appellant's conviction for aggravated murder is against the manifest weight of the evidence and is not supported by legally sufficient evidence in violation of the Fifth and Fourteenth Amendments of the Federal Constitution and Section 16, Article 1 of the Ohio Constitution.
 {¶ 3} "Appellant's conviction for aggravated robbery is against the manifest weight of the evidence and is not supported by legally sufficient evidence in violation of the Fifth and Fourteenth Amendments of the Federal Constitution and Section 16, Article 1 of the Ohio Constitution."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 5} During the early morning hours of October 24, 1996, the victim, Anthony Pauletta and his friend, David Lehecka, drove to East 116th Street and Miles Avenue intending to purchase crack cocaine. Pauletta, the driver, and Lehecka asked Kenneth Gay, a self-described crack fiend[1] if they could purchase $15 worth of crack. Gay denied having drugs, but promised to find a dealer for them.
 {¶ 6} Gay found Chapman who, according to Gay, expressed interest in robbing the potential buyers. He then told Gay he would meet with Pauletta and Lehecka shortly.
 {¶ 7} Gay testified that he walked alone to Pauletta and Lehecka's car. Upon hearing someone yell, Gay ran away. After a short distance, he looked back and saw Chapman approach the driver's window. Gay then heard a gunshot. In Gay's words, "I see [Chapman] chasing the car telling the guy to hold it, hold it. Like I say he just shot one time in the car and then he ran off." Although the street was sufficiently lit for Gay to view Chapman shoot Pauletta, he was unable to see the handgun used.
 {¶ 8} Several days after the shooting, Gay contacted the police to report what he witnessed. He stated he saw a .32 or .38 caliber revolver used in the crime. At trial Gay clarified this statement to mean that he saw Chapman shoot Pauletta and that he previously saw Chapman in possession of a .32 or .38 caliber revolver.
 {¶ 9} Lehecka's line of sight from the passenger's seat did not allow him to identify the shooter. Nevertheless, he saw the shooter take Pauletta's $15 and shoot Pauletta before fleeing.
 {¶ 10} Pauletta died later that day from a .357 or .38 caliber gunshot wound.
 {¶ 11} On November 7, 1997, a jury found Chapman guilty of one count of aggravated murder with a firearm specification and one count of aggravated murder with a firearm specification. This appeal followed.
 {¶ 12} Chapman's assigned errors challenge each conviction as unsupported by the manifest weight of evidence and as based upon insufficient evidence. While both manifest weight and sufficiency challenge the adequacy of evidence supporting a conviction, each is a distinct legal concept. Although a court of appeals may determine that a judgment is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of evidence.[2]
 {¶ 13} A challenge to the sufficiency of evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[3] On review for legal sufficiency, the appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[4] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[5]
 {¶ 14} When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses "and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[6] The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.[7]
 {¶ 15} Stated succinctly, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt.[8]
 {¶ 16} R.C. 2911.01, the aggravated robbery statute, prohibits the possession and display or use of a firearm while attempting or committing a theft offense, as defined in R.C. 2913.01.
 {¶ 17} Under R.C. 2903.01, the aggravated murder statute, "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, * * * aggravated robbery or robbery, * * *."
 {¶ 18} The undisputed testimony established the shooter, brandishing a revolver, stole $15 from Pauletta and then shot Pauletta causing his death. Without question, Pauletta was the victim of an aggravated robbery and an aggravated murder, facilitated by the use of a firearm. The only remaining question is whether Chapman committed these offenses.
 {¶ 19} Gay testified that Chapman possessed a revolver similar in caliber to the one used to kill Pauletta. Gay also testified that Chapman, moments prior to the robbery, expressed a desire to rob Pauletta. Gay then watched Chapman approach Pauletta's car and shoot him. Further, Lehecka testified that the shooter, identified as Chapman by Gay, stole the money from Pauletta and then shot him.
 {¶ 20} In a statement issued to the police, Chapman admitted to selling drugs at the corner of East 116th Street and Miles at the time of the shooting. He stated that Gay asked him if he had drugs for Pauletta and Lehecka, and if he had a gun. Chapman stated he denied having a gun and told Gay he would come over soon. After Gay left, Chapman heard a gunshot.
 {¶ 21} Viewing this evidence in a light most favorable to Chapman, we determine the State met its burden of production at trial and established Chapman's guilt beyond a reasonable doubt. Chapman, Gay, and Lehecka put Chapman at the scene of the crime, Lehecka witnessed a man stealing money from and shooting Pauletta, and Gay testified he witnessed Chapman shoot Pauletta. Thus, the evidence adduced at trial is sufficient to convict Chapman of each offense.
 {¶ 22} We also determine the manifest weight of evidence weighs against Chapman. The testimonies of Gay and Lehecka, as well as Chapman's admissions outweigh his exculpatory denial of shooting and robbing Pauletta. This record demonstrates the existence of substantial evidence upon which the court could reasonably conclude all the elements of an offense were proven beyond a reasonable doubt. We cannot say the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 23} Because Chapman's convictions are supported by sufficient evidence and are not contrary to the manifest weight of evidence adduced at trial, Chapman's assigned errors are without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANN DYKE, J., CONCUR.
[1] According to Gay's testimony, a "crack fiend" is one who acts as a middleman between the dealers and buyers in exchange for crack.
[2] State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
[3] Id.
[4] Id.; State. v. Fryer (1993), 90 Ohio App.3d 37, 43.
[5] Id.
[6] State v. Martin (1983), 20 Ohio App.3d 172,175, citing Tibbs v.Florida (1982), 457 U.S. 31, 38, 42. See, also, Thomkins.
[7] Martin, citing Tibbs. See, also, Thomkins.
[8] State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.