JOURNAL ENTRY and OPINION.
{¶ 1} Kenneth Hughes appeals from a judgment of the Cuyahoga County Court of Common Pleas stemming from his guilty plea to two counts of aggravated murder. Hughes assigns the following as errors for our review:
 {¶ 2} "Defendant was denied due process of law when thethree-judge panel failed to perform its statutory duties in this capitalprosecution. (Tr. 56, 57).
 {¶ 3} "Defendant was denied due process of law when his plea ofguilty was not knowingly, intelligently and voluntarily entered.
 {¶ 4} "Defendant was denied due process of law when there wasinsufficient evidence to show prior calculation and design to support aconvicted (sic) for aggravated murder. (Tr. 21, 22, 23, 24, 26, 27, 30,31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 45)."
 {¶ 5} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 6} On November 8, 2000, a Cuyahoga County Grand Jury returned a seven count indictment charging Hughes with, inter alia, two counts of aggravated murder for his role in the November 3, 2000 shooting death of two men outside a Cleveland nightclub. Each aggravated murder count included a mass murder specification and two firearm specifications.
 {¶ 7} Hughes waived his right to a jury trial and pled guilty to two counts of aggravated murder, each including a mass murder specification and one including a firearm specification. The plea agreement included a sentence of life imprisonment with possibility of parole after sixty-three years.
 {¶ 8} In accordance with R.C. 2945.06, the common pleas court referred the matter to a three-judge panel for the purposes of determining whether Hughes committed the crimes to which he pled and pronouncing sentence.
 {¶ 9} The three-judge panel heard testimony from Luther Roddy, an off-duty Cleveland police officer, and Cleveland Police Detective Sahir Hasan. Further, the court accepted six written and signed witness statements, including that of Marquese Bryant, Hughes's intended victim.
 {¶ 10} The panel determined the evidence established Hughes's guilt beyond a reasonable doubt and sentenced Hughes in accordance with his plea agreement. This appeal followed.
 {¶ 11} In his first assigned error, Hughes argues the trial court erred by failing to follow the statutory mandates relating to a three-judge panel's review following an aggravated murder guilty plea. We disagree.
 {¶ 12} Where the defendant waived his right to a trial by jury and pled guilty to aggravated murder, as in the case at hand, we initially consider whether the trial court complied with R.C. 2945.06, which states:
 {¶ 13} "In any case in which a defendant waives his right to trial by jury and elects to be tried by the court under section 2945.05 of the Revised Code, any judge of the court in which the cause is pending shall proceed to hear, try, and determine the cause in accordance with the rules and in like manner as if the cause were being tried before a jury. If the accused is charged with an offense punishable with death, he shall be tried by a court to be composed of three judges, * * *. If the accused pleads guilty of aggravated murder, a court composed of three judges shall examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly. The court shall follow the procedures contained in sections2929.03 and 2929.04 of the Revised Code in all cases in which the accused is charged with an offense punishable by death. * * *."
 {¶ 14} In State v. Green,[1] the Ohio Supreme Court considered a case similar to the one at hand. The supreme court held, "When a defendant pleads guilty to aggravated murder in a capital case, a three-judge panel is required [by R.C. 2945.06] to examine witnesses and to hear any other evidence properly presented by the prosecution in order to make a Crim.R. 11 determination as to the guilt of the defendant."[2]
 {¶ 15} The Green court then explained that Crim.R. 11(C)(4) "clearly implies that the court must take testimony upon a plea of guilty to aggravated murder in order to make the required determination under Crim.R. 11(C)(3)."[3]
 {¶ 16} In the present case, Roddy testified that he witnessed the shooting and apprehended Hughes; and Detective Hasan testified that he found bullet casings at the crime scene which matched the weapon used by the shooter and found in Hughes's possession immediately following the shooting. Further, the panel accepted six written and signed witness statements. This record clearly demonstrates that the three-judge panel, prior to announcing their decision and in full compliance with R.C. 2945.06
and Crim.R. 11, heard testimony and accepted exhibits regarding the offenses to which Hughes pled. Accordingly, Hughes's first assigned error is without merit.
 {¶ 17} In his second assigned error, Hughes argues the trial court erred by accepting his guilty plea which was not knowingly, intelligently, and voluntarily entered. We disagree.
 {¶ 18} In resolving whether a criminal defendant knowingly, intelligently, and voluntarily entered a plea, our query is whether the trial court adequately guarded constitutional or non-constitutional rights promised by Crim.R. 11(C).[4] The applicable standard of review depends upon which right or rights the appellant raises on appeal. We require strict compliance if the appellant raises a violation of a constitutional right delineated in Crim.R. 11(C)(2)(c); alternatively, if the appellant raises a violation of a non-constitutional right found in Crim.R. 11(C)(2)(b), we look for substantial compliance.
 {¶ 19} Hughes alleges the trial court violated non-constitutional rights by failing to inform him of its statutory duties flowing from his guilty plea. Consequently, we resolve his assigned error on the basis of substantial compliance).
 {¶ 20} As stated by the Ohio Supreme Court:
 {¶ 21} "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. The test is whether the plea would have been made otherwise."[5]
 {¶ 22} A trial court need not advise the defendant regarding the elements of the charged crime or to specifically inquire if he understands the charge "so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge."[6] Here, the three judge panel asked Hughes a litany of questions for the purpose of determining whether he understood his plea. The judges asked, inter alia, whether he discussed the plea with his attorneys, whether he freely wished to enter the plea, and pointedly, whether he understood the plea. Hughes answered each question affirmatively. Further, the judges delved into whether Hughes understood the specifics of his plea agreement, including the crimes to which he pled and the sentences which could be imposed. Again, Hughes indicated he understood his plea. Finally, the judges offered Hughes an opportunity to ask questions regarding his plea and the effects thereof. Hughes declined, and the panel proceeded to judgment.
 {¶ 23} Based on the totality of these circumstances, we determine the lower court succeeded in securing a knowing, intelligent, and voluntary plea. Accordingly, Hughes's second assigned error is without merit.
 {¶ 24} In his third assigned error, Hughes argues the trial court erred by finding him guilty based upon insufficient evidence. We disagree.
 {¶ 25} A challenge to the sufficiency of evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[7] On review for legal sufficiency, the appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[8] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[9]
 {¶ 26} As charged to Hughes, R.C. 2903.01(A) required the prosecution to prove he "purposefully, and with prior calculation and design," caused the death of another. Our review of the record indicates that the prosecution sufficiently established each element of aggravated murder.
 {¶ 27} The evidence reveals that Hughes shot and killed Lindsay and Roberson while intending to shoot Bryant. This conclusion is supported by Roddy's and Detective Hasan's testimonies as well as Bryant's written statement.
 {¶ 28} Roddy testified to hearing gunshots and seeing muzzle flashes while working security near the crime scene. Several witnesses then directed him to a vehicle where he and another off-duty police officer found Hughes. While handcuffing Hughes, the officers noticed a nine millimeter handgun fall from his waist. Roddy retrieved the handgun and passed it to the arresting officers when they arrived.
 {¶ 29} Detective Hasan testified to finding several nine millimeter bullet casings at the crime scene. These casings, as well as the slug removed from Roberson, matched the gun found in Hughes's possession.
 {¶ 30} Detective Hasan read Bryant's written statement into evidence. Bryant stated he and Hughes engaged in fisticuffs immediately preceding the shooting. The fisticuffs ended when Hughes brandished a handgun and Bryant fled. A few minutes later, Bryant saw Hughes raise a handgun and begin shooting in his direction.
 {¶ 31} Even though Hughes intended to shoot Bryant rather than Lindsay or Roberson, Hughes's purpose to kill Bryant transferred to the victims.[10] Thus, viewing the evidence in a light most favorable to Hughes, we determine the prosecution sufficiently established that Hughes purposefully caused Lindsay's and Roberson's deaths.
 {¶ 32} We are now left to determine whether Hughes exercised prior calculation and design. A bright-line test for determining the presence or absence of prior calculation and design does not exist under Ohio law.[11] Rather, such a determination "turns on the particular facts and evidence presented at trial."[12]
 {¶ 33} In State v. Cotton,[13] the Ohio Supreme Court provided the following guidance:
 {¶ 34} "Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."[14]
 {¶ 35} Further, we note "prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes."[15]
 {¶ 36} During the altercation between Hughes and Bryant, Hughes threateningly brandished a weapon. After Bryant fled, Hughes spent several minutes seeking Bryant in the parking lot. Upon finding Bryant, Hughes aimed and discharged his weapon toward him.
 {¶ 37} The several minutes during which Hughes sought Bryant in the parking lot provided him sufficient time and opportunity to plan the shooting.[16] Further, the circumstances surrounding the homicides demonstrate Hughes implemented a scheme calculated to kill Bryant.
 {¶ 38} On the record before us, we conclude the prosecution sufficiently established that Hughes committed aggravated murder by killing Lindsay and Roberson with prior calculation and design. Accordingly, Hughes third assigned error is without merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] (1998), 81 Ohio St.3d 100.
[2] Id. at the syllabus.
[3] Id. at 103. Crim.R. 11(C)(4) states, "With respect [to cases other than aggravated murder] the court need not take testimony upon a plea of guilty or no contest."
[4] State v. Nero (1990), 56 Ohio St.3d 106.
[5] Id. (Citations omitted.)
[6] State v. Rainey (1982), 3 Ohio App.3d 441, 442; State v. Calvillo
(1991), 76 Ohio App.3d 714.
[7] State v. Thompkins (1997), 78 Ohio St.3d 380.
[8] Id.; State. v. Fryer (1993), 90 Ohio App.3d 37.
[9] Id. at 43.
[10] See State v. Sowell (1988), 39 Ohio St.3d 322, 332 ("Our decision in State v. Solomon remains good law and we reiterate our holding that if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder * * *.").
[11] State v. Taylor (1997), 78 Ohio St.3d 15, 20.
[12] Id.
[13] (1978), 56 Ohio St.2d 8.
[14] Id. at paragraph three of the syllabus.
[15] State v. Coley (2001), 93 Ohio St.3d 253, 264, citing State v.Palmer (1997), 80 Ohio St.3d 543, 567-568; State v. Taylor,78 Ohio St.3d 15, 20-23.
[16] See Coley; Palmer; Taylor.