OPINION
{¶ 1} Appellant, Joseph L. Mitchell, Jr., appeals the judgment of the Lake County Court of Common Pleas. Mitchell was convicted of carrying a concealed weapon and having a weapon while under disability.
 {¶ 2} Officer Eric Miller of the Painesville Police Department was informed, during his pre-shift briefing, to be on the lookout for Mitchell, as a warrant had been issued for his arrest. Officer Miller noticed Mitchell standing on a street corner. He was responding to a 911 call, so he could not stop at that time. Officer Miller notified other officers of Mitchell's location.
 {¶ 3} Officer Toby Burgett was also responding to the 911 call, when he heard Officer Miller's call about Mitchell. The officers determined that the 911 call was actually a prank phone call. Officer Burgett then went to look for Mitchell.
 {¶ 4} Mitchell was visiting his mother at her home in Painesville. Also present at the Painesville residence were Mitchell's sister and her two children, ages five and twelve. Mitchell's mother noticed an individual walk by the front window carrying a gun. According to the testimony of Mitchell and his mother, both Mitchell's mother and sister became concerned about Mitchell's five-year-old nephew, who was outside playing. Mitchell then retrieved a fanny pack from the closet. Inside the fanny pack was a .25 caliber firearm. Mitchell then went outside to find his nephew.
 {¶ 5} Soon after Mitchell went outside, Officer Burgett spotted him near the driveway. Officer Burgett ordered Mitchell to the ground and handcuffed him. When Mitchell was brought to his feet, Officer Burgett noticed the fanny pack. The fanny pack was unclipped, and it fell to the ground. The gun popped out of the fanny pack when it hit the ground.
 {¶ 6} As a result of this incident, Mitchell was indicted on one count of carrying a concealed weapon and one count of having a weapon while under disability. The indictment states that, at the time of the offense, Mitchell was under disability for a prior robbery conviction.
 {¶ 7} The case proceeded to a jury trial. Mitchell requested several jury instructions regarding affirmative defenses to the charges against him. The trial court did not submit his requested instructions to the jury. The jury found Mitchell guilty of both offenses.
 {¶ 8} Mitchell raises a single assignment of error:
 {¶ 9} "The trial court erred to the prejudice of the defendant-appellant when it refused to submit his proposed jury instructions raising affirmative defenses regarding the charges of carrying a concealed weapon and having weapons while under disability."
 {¶ 10} Requested jury instructions should be given if they are (1) correct statements of the applicable law, (2) relevant to the facts of the case, and (3) not included in the general charge to the jury.[1]
An appellate court is to review a trial court's decision regarding a jury instruction to determine whether the trial court abused its discretion.[2]
 {¶ 11} Mitchell claims that the trial court erred when instructing the jury. He requested instructions for both the carrying a concealed weapon charge and the charge of having a weapon while under disability. In this opinion, we will only reproduce the proposed jury instructions for carrying a concealed weapon, as the proposed jury instructions for each offense are substantially similar.
 {¶ 12} "[1. NECESSITY.] Mr. Mitchell is raising the affirmative defense of Necessity to the charges brought against him. The rationale for the defense of Necessity is that under the force of extreme circumstances, conduct that might otherwise constitute a crime is sometimes justifiable and not criminal, when the actor engages in the conduct out of necessity to prevent a greater harm from occurring. It is not required that the harm prevented be a criminal act, it is only important that an interest recognized by the community is protected by its prevention.
 {¶ 13} "If you find that Mr. Mitchell reasonably believed at the moment he grabbed the gun that his action was necessary to protect his nephew and the other children outside, and that he reasonably believed that keeping the gun in the fanny pack was necessary to prevent the escalation of a dangerous situation, you have found that his action was one of Necessity, and he must be found not guilty of the crime of Carrying a Concealed Weapon.
 {¶ 14} "[2.] DEFENSE OF ANOTHER. The defendant claims to have acted in defense of his nephew and other children present outside. The defendant had no greater rights than the children and was justified in using deadly force only if:
 {¶ 15} "(A) the children were not at fault in creating the situation and had no duty to retreat, escape, or withdraw, and
 {¶ 16} "(B) the defendant had reasonable grounds to believe and an honest belief that the children were in imminent and immediate danger of death or great bodily harm, and that the only means of protecting them was by the use of deadly force.
 {¶ 17} "If you find that Mr. Mitchell reasonably believed at the moment he grabbed the gun that his action was in defense of his nephew and the other children outside, you have found that his actions were in defense of another, and he must be found not guilty of the crime of Carrying a Concealed Weapon.
 {¶ 18} "[3. DURESS.] The defendant has claimed the defense of duress, claiming that he acted out of the fear of great bodily harm or out of fear for the life of his nephew and the other children outside. When a person is forced to participate in an offense against his will because he honestly believes and has good reason to believe that another is in immediate danger of death or great bodily harm, and that there was no reasonable opportunity to escape, he is entitled to be acquitted on the ground of duress.
 {¶ 19} "If you find by the preponderance or greater weight of the evidence that the will of Mr. Mitchell was overcome by the fear of great bodily harm or fear of death to his nephew and the other children and that it was reasonable for him to believe that he could not avoid participation without the immediate exposure of death or great bodily harm to the children, then you must find him not guilty of Carrying a Concealed Weapon."
 {¶ 20} Initially, we note that the facts of the case do not support Mitchell's proposed jury instructions. Duress requires a "sense of immediate, imminent death, or serious bodily injury if the actor does not commit the act as instructed."[3] There was no evidence presented that anyone was threatening Mitchell with death or serious bodily harm. A necessity defense also requires a "sense of present, imminent, immediate and impending death, or serious bodily injury."[4] Finally, a person who acts in the defense of a third person may use as much force as that person may have used.[5] One of the requirements of self-defense is that there is a bona fide belief that one is in imminent danger of death or great bodily harm.[6] All of the proposed defenses require a showing of an imminent danger of death or great bodily harm. Although both Mitchell and his mother testified that there was someone with a gun outside the residence, and Mitchell's nephew was also outside, there was no evidence that the child was in imminent danger. Therefore, as the evidence presented did not support Mitchell's proposed jury instructions, the trial court did not err by refusing to give them.
 {¶ 21} Moreover, even if we were to find that there was sufficient evidence presented to justify the proposed jury instructions, the instructions would still have been precluded by statute. Affirmative defenses are specifically provided for as potential defenses to the crime of carrying a concealed weapon in R.C. 2923.12, which states, in relevant part:
 {¶ 22} "(C) It is an affirmative defense to a charge under this section of carrying or having control of a weapon other that dangerous ordinance, that the actor was not otherwise prohibited by law from having the weapon, and that any of the following apply:
 {¶ 23} "***
 {¶ 24} "(2) The weapon was carried or kept ready at hand by the actor for defensive purposes, while the actor was engaged in a lawful activity and had reasonable cause to fear a criminal attack upon the actor or a member of the actor's family, or upon the actor's home, such as would justify a prudent person in going armed."
 {¶ 25} All of Mitchell's proposed jury instructions essentially restate the affirmative defense codified in R.C. 2923.12(C)(2). Mitchell was not permitted to use this affirmative defense because he was "otherwise prohibited by law from having the weapon." It is undisputed, and was admitted by Mitchell on the witness stand, that Mitchell was under disability at the time he was arrested and, thus, not permitted by law to have a weapon. Therefore, Mitchell was not entitled to any of his proposed jury instructions for the crime of carrying a concealed weapon.
 {¶ 26} Mitchell also submitted the proposed jury instructions as affirmative defenses to the charge of having a weapon under disability. Unlike the carrying a concealed weapon statute, the weapon under disability statute does not specifically provide affirmative defenses.[7]
 {¶ 27} Mitchell cites State v. Hardy for his argument that self-defense is a valid defense to a charge of having a weapon under disability.[8] However, the Eighth Appellate District has noted that Hardy is an extremely narrow exception to the statute prohibiting persons on disability from having a weapon.[9] The court further noted that several jurisdictions do not recognize this exception. Finally, the court declined to extend the self-defense exception in Hardy to defense of a third person.[10]
 {¶ 28} The Eighth Appellate District held that "[b]y its language, R.C. 2923.12(C) makes it clear that R.C. 2923.12(C)(2) applies only to a charge of carrying a concealed weapon under R.C. 2923.12 and is not available as a defense to a charge under any other section, including a charge of carrying a firearm while under disability, in violation of R.C. 2923.13."[11] We agree. Again, Mitchell's proposed jury instructions essentially restate the statutory language of R.C. 2923.12(C). Therefore, he was not entitled to use the affirmative defenses set forth in his proposed jury instructions as defenses to the charge of having a weapon while under disability.
 {¶ 29} Mitchell was not entitled to use any of the affirmative defenses set forth in his proposed jury instructions. The proposed jury instructions were not applicable to the facts of this case, and the trial court did not abuse its discretion in excluding the jury instructions.
 {¶ 30} Mitchell's assignment of error is without merit.
 {¶ 31} Subsequent to parties' briefing in this case, the First Appellate District has affirmed a trial court's ruling that R.C. 2923.12, Ohio's statute prohibiting the carrying of a concealed weapon, is unconstitutional.[12] At the time of this opinion, the Supreme Court of Ohio has not ruled on this issue. Therefore, this court will continue to follow the precedent that there are no constitutional concerns with R.C.2923.12.[13]
 {¶ 32} The judgment of the trial court is affirmed.
DONALD R. FORD, J., concurs.
JUDITH A. CHRISTLEY, J., concurs in judgment only.
[1] State v. DeRose, 11th Dist. No. 2000-L-076, 2002-Ohio-4357, at ¶ 33, quoting State v. Edwards, 11th Dist. No. 2001-L-005, 2002-Ohio-3359, at ¶ 20.
[2] State v. Wolons (1989), 44 Ohio St.3d 64, 68.
[3] State v. Getsy (1998), 84 Ohio St.3d 180, 199, citing State v.Cross (1979), 58 Ohio St.2d 482, 487.
[4] State v. Cross, 58 Ohio St.2d at 487.
[5] City of Tiffin v. Thomas (June 23, 1995), 3d Dist. No. 13-94-50, 1995 Ohio App. LEXIS 2671, at *5, citing State v. Wenger (1979),58 Ohio St.2d 336, 340-341.
[6] State v. Barnes (2002), 94 Ohio St.3d 21, 24, citing State v.Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
[7] R.C. 2923.13.
[8] State v. Hardy (1978), 60 Ohio App.2d 325.
[9] State v. Fryer (1993), 90 Ohio App.3d 37, 45.
[10] Id.
[11] Id. at 44.
[12] Klein v. Leis, 146 Ohio App.3d 526, 2002-Ohio-1634.
[13] See, generally, State v. Andrews (1990), 57 Ohio St.3d 86; Statev. Brogdon (Jan. 27, 1995), 11th Dist. No. 92-T-4746, 1995 Ohio App. LEXIS 245.