JOURNAL ENTRY and OPINION
Appellant Travis Smith appeals the trial court's decision finding him guilty of one count of aggravated murder under R.C. 2903.01 and four counts of attempted aggravated murder under R.C. 2923.02 and R.C. 2903.01, each with a firearm specification under R.C. 2941.145. Smith assigns the following errors for our review:
 I. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN CONVICTIONS OF ATTEMPTED MURDER AGAINST SHANIKA GREEN.
 II. THE PROSECUTOR IMPROPERLY INTRODUCED AND LATER ARGUED IRRELEVANT VICTIM IMPACT EVIDENCE.
 III. THE TRIAL COURT ERRED BY FAILING TO PROVIDE THE JURY WITH INSTRUCTIONS FOR LESSER INCLUDED OFFENSES.
 IV. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ALLOW THE APPELLANT'S COUNSEL TO COMPLETE THEIR CLOSING ARGUMENT IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.
 V. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL.
 VI. THE VERDICTS ARE AGAINST THE WEIGHT OF THE EVIDENCE.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
The State's theory in this case is that Travis Smith broke into Robert Taylor's home, killed him, and shot at Daryl Rivers, Johnny Harris, Shanika Green, and Deborah Stevens. Smith did not present any witnesses. Rather, he questioned the credibility of Rivers' and Harris' witness testimony, and argued the State failed to present a credible motive for Smith to do the shooting.
The State first presented the testimony of Dr. Robert Challener of the Cuyahoga County Coroner's Office. Challener performed the autopsy on Taylor and determined two gunshot wounds caused his death. Challener testified that Rivers, Harris, Green, and Stevens tested positive for cocaine use within the previous eight hours. Green also tested positive for heroin use within the previous eight hours. Challener testified that although these drugs have a stimulating effect and could diminish the users' perceptive abilities, their use would not preclude these witnesses from identifying the shooter.
The State next presented the testimony of Curtis Jones, a forensic scientist with the Cuyahoga County Coroner's Office. Jones testified that the muzzle of the gun was only twenty-four to thirty-six inches away from Taylor when he was shot, and that Taylor was not holding a gun when he was shot.
The State then presented the testimony of Detective Timothy Entenok of the Cleveland Police Department. Detective Entenok responded to the emergency call at 9512 Kolar Avenue. Upon his arrival, he found Stevens, who had been shot in the shoulder, sitting on the driveway in front of the house. Detective Entenok then found Harris, who had been shot two times, laying in a hallway inside the house. Entenok's partner found Green next door with a fractured ankle. Upon returning to the home, Entenok found Rivers, who had been shot twice, sitting on the toilet in the bathroom. Entenok then found Taylor in a bedroom, dead from multiple gunshot wounds. Entenok found several bullet casings strewn throughout the home.
The State also presented the testimony of Rivers and Harris. Rivers testified that he was sitting on the toilet when Smith came in and shot him twice. Rivers fell to the floor and pretended to be dead. Through the still open door, Rivers was able to see Smith kick in the bedroom door and shoot Harris. Harris testified that he was in the bedroom getting high with Stevens and Green when he heard a loud bang. Soon thereafter, Smith busted through the door and shot at all three of them. One shot hit Stevens. Green escaped being shot by jumping out from a second-floor window. Harris attempted to wrestle the gun away from Smith, but was unable to do so. Smith shot Harris five times during this encounter.
Officers Thomas Lucey and Donald Meel of the Cleveland Police Department's Scientific Investigation Unit testified that they recovered several shell casings and spent bullets from the crime scene and from the bodies of the victims. Lucey testified that four of the spent bullets, two recovered from Taylor's body, were from the same nine millimeter weapon. Likewise, the shell casings were from the same nine millimeter weapon. The weapon was never recovered.
Officer Michael Burger testified that after he presented Stevens with photographs of potential suspects, she identified Smith as the shooter. Officer Denise Kovach testified that Green, as well, identified Smith as the shooter.
In his first assignment of error, Smith argues the prosecution presented insufficient evidence to support the conviction of attempted aggravated murder of Green. A challenge to the sufficiency of evidence supporting a conviction requires us to determine whether the State met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. During a review for legal sufficiency, our function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt. Id. State v. Fryer (1993), 90 Ohio App.3d 37, 43, 627 N.E.2d 1065, 1069. In making our determination, we must view the evidence in a light most favorable to the prosecution. Id. at 43.
R.C. 2903.01 states:
 (A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy.
* * *
 (F) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in section 2929.02 of the Revised Code.
R.C. 2923.02 states:
 (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
* * *
 (E) Whoever violates this section is guilty of an attempt to commit an offense.
* * *
Looking at the evidence in a light most favorable to the prosecution, we determine the State put forth sufficient evidence to sustain a conviction for the attempted aggravated murder of Green. The prosecution presented four witness identifications of Smith as the shooter. According to Harris' testimony, Smith broke into the bedroom and shot at least once at Green. Green jumped from the second floor window to avoid being shot by Smith, whom she identified as the person who attempted to shoot her.
By shooting at or near Green, Smith engaged in conduct that could likely have caused Green's death. Harris' testimony and the admitted statements taken from Green and Stevens, if believed, establish appreciable evidence that Smith purposefully, and with prior calculation and design, attempted to cause Green's death. Accordingly, Smith's first assignment of error lacks merit.
In his second assignment of error, Smith argues the State improperly introduced evidence of Harris' injuries. Smith's counsel did not object to the victim impact statements at trial. When counsel does not object to specific conduct at trial, and then assigns such conduct as error, our standard of review is plain error. Crim.R. 52(B); See, State v. Green (2000), 90 Ohio St.3d 352, 373, 738 N.E.2d 1208, 1231, citing State v. Wade, 53 Ohio St.2d 182, 373 N.E.2d 1244, paragraph one of the syllabus. In determining plain error, we examine all properly admitted evidence and determine whether the jury would have convicted Smith even if the alleged error had not occurred. See, State v. Slagle (1992),65 Ohio St.3d 597, 605, 605 N.E.2d 916, 925. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.
Smith refers us to several instances where the prosecution wrongfully introduced victim impact evidence or statements. During the prosecution's direct examination of Harris, the following dialogue occurred:
 By Mr. Smerillo: * * * did you undergo any treatments, or anything like that [while in the hospital]?
 Harris: I underwent several surgeries. One left me with a colostomy bag for the rest of my life, left foot paralyzed, I can't move my toes in my left foot, and right through my right arm, and damage to my two right fingers.
 Q: All right. You mentioned a colostomy bag. Can you tell us a little bit about what that is?
 A: It's one of these. I have to where [sic] this for rest of my life. It goes into my side. I take the sticker off, it goes into my side, and I have to change it like twice a day.
 Q: That is as a result of the injuries you received on September 25th?
A: Yes.
During redirect examination of Harris, the prosecution continued this line of dialogue.
 By Mr. Smerillo: Johnny, how long were you in the hospital?
Harris: About four months.
* * *
 A: I went to rehab, after I left the hospital, I went to a nursing home to learn how to so they could teach me to walk again.
* * *
 Q: All right. And you mentioned you had two surgeries while you were in the hospital?
A: Yes.
 Q: And when you left the hospital, you went to a nursing home. Do you remember how long you were in the nursing home?
 A: I think I stayed in the nursing home two or three months.
Q: Okay. You had surgery on your stomach, right?
A: Yes.
 Q: And how much longer will you have to use the colostomy bag?
 A: For the rest of my life, which they said if I go through another surgery, I might die.
 Q: You will have to wear that colostomy bag for the rest of your life?
A: Yes.
During closing arguments, the prosecution made the following comments:
 Johnny Harris was shot three more times. He was hit a total of five times. His wounds are very, very serious, very extensive. He was in the hospital for a number of months. Then he went for therapy for an additional period of time. His medical reports are here to indicate the seriousness of his wounds. He indicated that he also has a colostomy, that he has to wear this particular bag for the rest of his life.
* * *
 Another argument I don't understand, you have got poor Mr. Johnny Harris shot five times, he's going to end up never in a good state of health, is going to have this colostomy bag, * * *.
The prosecution presented substantial evidence from four witnesses who stated Smith entered the house and shot Harris, Rivers, Stevens, and Taylor, and shot at Green. Expert testimony established that the spent bullets and shell casings came from the same weapon used to kill Taylor. The prosecution presented sufficient evidence to establish that Smith purposefully, and with prior calculation and design, caused Taylor's death and attempted to cause the death of Rivers, Harris, Stevens, and Green. Considering the substantial evidence adduced at trial, we conclude neither individually nor in the aggregate did the victim impact comments affect the outcome of this trial. Accordingly, Smith's second assignment of error lacks merit.
In his third assignment of error, Smith argues the trial court failed to instruct the jury that involuntary manslaughter is a lesser included offense of aggravated murder, and that felonious assault is a lesser included offense of aggravated murder. Smith requested the court instruct the jury regarding the relevant lesser included offenses. The court, referring to Crim.R. 30(A) denied the request because Smith failed to comply with the court's order to put any requested instructions in writing.
Crim.R. 30(A) states:
 * * * any party may file written requests that the court instruct the jury on the law as set forth in the requests.
Regardless of whether Smith needed to file written requests, the trial court was under no obligation to provide the jury with instructions for lesser included offenses. In State v. Thomas (1988), 40 Ohio St.3d 213,533 N.E.2d 286, paragraph two of the syllabus, the Ohio Supreme Court held:
 Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.
In making this determination, the court must view the evidence in the light most favorable to the defendant. State v. Wilkins (1980),64 Ohio St.2d 382, 388, 415 N.E.2d 303, 308; State v. Campbell (1994),69 Ohio St.3d 38, 47-48, 630 N.E.2d 339, 349.
Having set forth our standard, we now turn to whether the evidence presented at trial would reasonably support acquittals on aggravated murder and attempted aggravated murder, and convictions upon the lesser included offenses of involuntary manslaughter and felonious assault.
Purposefulness is an essential element of both aggravated murder and attempted aggravated murder.
R.C. 2901.22(A) defines purposefulness as follows:
 A person acts purposely when it is his specific intention to cause a certain result * * *.
Here, the evidence supports a finding that Smith broke into Taylor's house and purposefully shot Taylor while he lay defenseless on the floor. The testimony of four witnesses supports a finding that Smith proceeded to purposefully shoot at Harris, Rivers, Stevens, and Green. Such evidence, even when viewed most favorably to Smith, could not support acquittals on the offenses charged. Consequently, the instructions regarding lesser included offenses were not necessary. Further, since purposefulness distinguishes aggravated murder from involuntary manslaughter, the evidence adduced at trial could not support a conviction on involuntary manslaughter. In view of the evidence presented at trial, even when viewed in a light most favorable to Smith, the trial court did not err in refusing to instruct the jury on involuntary manslaughter or felonious assault. Accordingly, Smith's third assignment of error lacks merit.
In his fourth assignment of error, Smith argues the trial court abused its discretion by not allowing Smith's co-counsel to present his closing argument after his lead counsel had already used the allotted time. Smith's co-counsel intended to divide their time into a twenty minute block for one of them and a ten minute block for the other. The first co-counsel, however, argued during the entire thirty minute period. The court would not permit the second co-counsel further argument.
The time allotted for closing arguments is within the sound discretion of the trial court. State v. Jenkins (1984), 15 Ohio St.3d 164, 221,473 N.E.2d 264, 312-313, citing Halsey v. State (1932), 42 Ohio App. 291,297, appeal dismissed (1932), 125 Ohio St. 628; State v. Kay (1967),12 Ohio App.2d 38, 49-52; United States v. Mills (C.A. 6, 1966),366 F.2d 512, 515. We will not disturb the trial court's decision absent a clear abuse of discretion. Jenkinsat 221, 313. Within its discretion, the trial court must permit each party reasonable time to make its arguments so as to permit a full and complete defense. Jenkins at 221, 313, quoting Braeunig v. Russell (1960), 170 Ohio St. 444, 446,166 N.E.2d 240, 242.
The thirty minutes the court allowed here was reasonable and sufficient for Smith's co-counsel to make necessary arguments. The trial court's decision did not prevent Smith from presenting a full and complete defense; his co-counsel simply did not use the time in the manner in which they initially planned. Smith was not prejudiced by the trial court's decision to prevent his co-counsel from presenting additional summation after the reasonably allotted time expired. Accordingly, Smith's fourth assignment of error lacks merit.
In his fifth assignment of error, Smith asserts his trial counsel rendered ineffective assistance by failing to object to the alleged prosecutorial misconduct discussed above, by failing to properly file for written jury instructions regarding lesser included offenses, and by failing to object to an improper causation instruction. In order to prevail on a claim of ineffective assistance of counsel, Smith must show that his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by such performance. State v. Madrigal (2000), 87 Ohio St.3d 378, 397, 721 N.E.2d 52, 70, reconsideration denied (2000), 88 Ohio St.3d 1428, 723 N.E.2d 1115, citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258,111 L.Ed.2d 768. An essential element of an ineffective assistance of counsel claim is a showing that, but for trial counsel's alleged errors, there is a substantial probability that the outcome of the trial would have been different. State v. Lindsey (2000), 87 Ohio St.3d 479, 489, 721 N.E.2d 995,1007, reconsideration denied (2000), 88 Ohio St.3d 1438, 724 N.E.2d 812.
We are not required to decide whether the statements or evidence were improper or whether Smith's counsel should have objected. Rather, we are concerned with whether Smith's counsel, by not objecting, performed below an objective standard of reasonableness, and as a consequence, the trial outcome was altered. The evidence against Smith was substantial and compelling. Even if we assume the statements and evidence were improper, and reasonable counsel would have objected, we do not recognize a substantial probability that the outcome of the trial would have been different if Smith's counsel proffered objections that were sustained by the trial court. Accordingly, we overrule Smith's second assignment of error.
In his sixth assignment of error, Smith argues the jury rendered verdicts counter to the manifest weight of evidence presented at trial. When an appellant challenges a conviction on manifest weight grounds, we review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717,720, citing Tibbs v. Florida (1982), 457 U.S. 31,38, 42. See, also, State v. Thomkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. We will not reverse a conviction if there is substantial evidence upon which the trial court reasonably concluded that all the elements of the charged offenses were proved beyond a reasonable doubt. See State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
Here, the trial court heard substantial evidence that Smith broke into Taylor's apartment, shot and killed Taylor, and shot at the other four victims. The testimony and statements of four witnesses to the shootings and the testimonies of the responding police officers and the forensic scientist is substantial evidence upon which the jury could reasonably find that Smith committed the charged offenses. Adhering to our standard of review, we find the jury did not clearly lose its way or create such a manifest miscarriage of justice that Smith's convictions must be reversed and a new trial ordered. Accordingly, Smith's sixth assignment of error lacks merit.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., CONCURS; ANNE L. KILBANE, J., CONCURS IN PART AND CONCURS IN JUDGMENT ONLY.
 ____________________________ PATRICIA ANN BLACKMON, JUDGE